**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) ) SHAMROCK FINANCE LLC ) ) Debtor. ) ) | Chapter 11 Case No. 21-10315-FJB |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
*(Emergency Determination Under MLBR 9019-1(g)(A) Requested)*

**REQUEST FOR EMERGENCY HEARING**

*Liquidity is key to the Debtor Shamrock Finance LLC ("Shamrock") – it must be able to make substantial, daily disbursements to its customers.* The survival and success of Shamrock's business requires that it provide reliable and timely advances to its customers on account of its various floor plan arrangements. As described in the Budget, many of these customers request and, at Shamrock's discretion, generally receive, additional advances on their floor plan loans daily. *Shamrock and its bankruptcy estate will suffer immediate and irreparable harm if it cannot continue to make advances to and for the benefit of its customers without any delay.*

**INTRODUCTION AND REQUESTED RELIEF**

Shamrock requests that the Court enter interim and final orders allowing this Motion, and request:

(i) The entry of an order substantially in the form of **Exhibit A** authorizing the interim use of Cash Collateral on an emergency basis to avoid immediate and irreparable harm to Shamrock's bankruptcy estate pending a final hearing;

(ii) The entry of a final order authorizing the use of Cash Collateral after a final hearing;

(iii) The granting of replacement liens to those creditors asserting liens on Shamrock's cash collateral: (1) to the same extent, priority and validity of such liens that existed as of the Petition Date (as defined below), (2) to be recognized only to the extent of any diminution in the value of the creditor's prepetition collateral arising from Shamrock's use of cash collateral, (3) on the same types of collateral that the creditors had valid liens on as of the Petition Date; and

(iv) The scheduling of a final hearing date on the use of cash collateral

In further support of this Motion, Shamrock respectfully submits the following:

## THE DEBTOR

1. On March 12, 2021 (the "**Petition Date**"), Shamrock filed a voluntary petition under Chapter 11 of the Bankruptcy Code and continues to hold its assets and manage its affairs as a debtor-in-possession.

2. Shamrock's background and history are more fully detailed in the "*Declaration of Kevin Devaney*" ("**First Day Declaration**") filed on the Petition Date. In summary, Shamrock is a single member Massachusetts limited liability company that provides inventory floorplan financing to independent car dealerships in the New England area. Dealers are primarily located in Massachusetts, with a small number

in New Hampshire, Connecticut, Rhode Island and Florida.  Shamrock finances almost exclusively vehicles purchased from the major dealer only auctions.  For an additional fee, Shamrock also finances non-auction purchases, such as dealer trades or private purchases.

3.  As part of its customary financing arrangement, Shamrock requires its debtors, the independent car dealerships referenced above, to execute a Floorplan Note and Loan and Security Agreement collectively known as the Floorplan Agreement.  Pursuant to the Floorplan Agreement, the debtor grants to Shamrock a security interest in all of its assets including, but not limited to its motor vehicle inventory, consigned goods and chattel paper.  Shamrock perfects its security interest in all of its debtors' assets in accordance with applicable law.

## SHAMROCK'S CASH

4.  Shamrock's assets largely constitute its cash and what it refers to as its dealer receivables, i.e., monies Shamrock loaned to its motor vehicle dealer customers.  As of the Petition Date, Shamrock has approximately $377,614.00 in cash, excluding approximately $115,000 held in a certificate of deposit at Leader Bank, N.A. ("*Leader*") to fully collateralize a letter of credit issued by Leader for Shamrock.  As of the Petition Date, Shamrock calculates that it has approximately 90 "active" customers to which Shamrock provides floor plan financing, who owe the aggregate amount of approximately $9,500,934.  Additionally, Shamrock has approximately 97 customers in default, and whose claims are largely in various stages of collection, in the aggregate amount of approximately $2,980,861 (after

reduction for uncollectible amounts). Shamrock has a "contra" account (identified on the balance sheet as a "Dealer Reserve") in the approximate amount of $442,744.25 as of Feb. 28, 2021, which represents the amounts paid in addition to the required principal payments when a vehicle is taken off floor plan. Not all of Shamrock's dealers have established reserves.. The amounts owed by the dealers would be reduced if, as and when Shamrock applies the particular contra account to a particular dealer receivable (often when a dealer defaults or terminates its lending relationship with Shamrock).

5. The survival and success of Shamrock's business requires that it provide reliable and timely advances to its customers on account of its various floor plan arrangements. Attached as **Exhibit D** to the First Day Declaration is Shamrock's 13-week cash flow projection and budget (the "**Budget**"). Shamrock has approximately $377,614 in cash, excluding approximately $115,000 held in a certificate of deposit at Leader Bank, N.A. ("**Leader**") to fully collateralize a letter of credit issued by Leader for Shamrock. This cash is the essentially the "inventory" from which Shamrock makes advances to its active customers. During the Budget period (through week ending June 12, 2021), Shamrock projects it will make advances to its active customers in the aggregate amount of $10,250,000, but will collect from its customers $10,650,000. Thus, although Shamrock projects that the amounts owed by its customers (its "dealer receivables") will decrease during the Budget period from $9,500,934 to $9,165,934, Shamrock also projects that its cash on hand will increase from $377,614 to $1,021,784 during that period. This activity reflects the seasonality

4

in the motor vehicle business and the increase in purchases from dealers during the spring months.

## SHAMROCK'S SECURED CREDITORS

6.   A search of the records of the Massachusetts Secretary of State's office reveals that five (5) creditors filed UCC-1 financing statements against Shamrock, as follows:

| DATE OF FILING | CREDITOR | AMOUNT OWED | COLLATERAL | NOTE |
|---|---|---|---|---|
| 09/10/2015 | Lawrence Kaplan | $710,875.00 | Legal rights of ownership(titles) in possession of debtor. All contracts & security agreements w/debtors of Shamrock Finance LLC. All cash & cash equivalents including but not limited to marketable securities of Shamrock Finance LLC | Financing Statement Lapsed |
| 03/01/2017 | DJJD, Inc. | $0.00 | Legal rights of ownership(titles) in possession of Shamrock Finance LLC, all contracts & security agreements including but not limited to rights therein with debtors of Shamrock Finance LLC and all cash and cash equivalents | No note to DJJD, Inc.  Three notes of approximately  $1,500,000 in principal are payable to Damian and Melanie Roberts, believed to be principals of DJJD, Inc. |
| 01/03/2018 | Leonard and Mary Bonfanti | $100,750.00 | No collateral described | |
| 04/22/2020 | Alfred Laustsen | $100,750.00 | Legal rights of ownership (titles) in possession of Shamrock Finance LLC.  All contracts and security agreements including, but not limited to, rights therein with debtors of Shamrock Finance LLC.  All cash and cash equivalents including, but not limited to, marketable securities and insurance proceeds.  All tangible personal property, fixtures, leasehold improvements, trade fixtures, equipment and other personal property.  All products thereof and all additions and accessories thereto, substitutions therefore and replacements thereof owned by Shamrock Finance LLC. | |
| 01/25/2021 | Stephanie A. Harris | $119,388.75 | Legal rights of ownership (titles) in possession of Shamrock Finance LLC.  All contracts and security agreements including, but not limited to, rights therein with debtors of Shamrock Finance LLC.  All cash and cash equivalents including, but not limited to, marketable securities and insurance proceeds.  All tangible personal property, fixtures, leasehold improvements trade fixtures, equipment and other personal property. All products thereof and all additions and accessories thereto, substitutions therefore and replacements thereof owned by Shamrock Finance LLC. | The filing of a financing statement is an avoidable preference.  Stephanie Harris is believed to be related to Keith Harris, CPA. |

## RELIEF REQUESTED

7.   Shamrock requests authority to continue honoring its prepetition credit agreements with its existing active customers and new customers it acquires after

5

the Petition Date, and to enter into and perform floor planning arrangements with all such customers in the ordinary course of Shamrock's business. In this regard, Shamrock wishes to make advances and new loans in the ordinary course of its business, and to collect payments from its customers and apply those payments to those customers' accounts, in the amounts and as otherwise set forth in the Budget.

8. 11 U.S.C. §363(c)(1) permits Shamrock to enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing. However, 11 U.S.C. §363(c)(2) provides an exception, and prohibits Shamrock from using, selling or leasing cash collateral unless each entity with an interest in cash collateral consents or pursuant to a court order. 11 U.S.C. §363(a) defines cash collateral in pertinent part as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents."

9. With the possible exception of Alfred Laustsen (who claims "all contracts" as among his collateral), none of the financing statements describe collateral as including accounts receivable or notes receivable. However, the amounts owed from Shamrock's customers are either accounts receivable or notes receivable. They are not "cash, negotiable instruments, documents of title, securities or deposits." All of the secured creditors identify "cash equivalents" as among their collateral, and indeed, 11 U.S.C. §363(a) includes "cash equivalents" in the definition of cash collateral. Accounts receivable, however, are not cash equivalents. <u>See</u>, <u>In re</u>

6

Anaheim Elec. Motor, Inc., 137 B.R. 791, 795 (Bankr. C.D. Cal. 1992) (court interprets Supreme Court precedent as rejecting "idea that account receivables are to be treated like cash or cash equivalents"). Nor are notes receivable "cash equivalents." Joyner Family Ltd P'ship., 118 T.C.M. (CCH) 451, 2019 RIA TC Memo 2019-159 (U.S. Tax Court 2019) (promissory note not cash equivalent for tax purposes). Instead, the Massachusetts district court relied upon the definition of cash equivalents in FAS 95 ¶ 8 to define "cash equivalents" as "short-term, highly liquid investments that are both: (a) readily convertible to known amounts of cash, and (b) so near their maturity that they present insignificant risk of changes in value because of changes in interest rates." Blatt v. Muse Techs., Inc., No. CIV.A. 01-11010-DPW, 2002 WL 31107537, at *6 (D. Mass. Aug. 27, 2002) and n.17 (emphasizing that under this definition, only investments with original maturities of three months or less qualify" as cash equivalents); Wells v. Monarch Cap. Corp., 1991 WL 354938 (D. Mass. Aug. 23, 1991) at *15 n.7 ( noting that for insurance purposes under National Association of Insurance Commissioners guidelines, "short-term" investments are "in the form of bonds, commercial paper, money market instruments, repurchase agreements, or collateral and mortgage loans whose maturities at the time of acquisitions were one year or less, in other words, investments easily turned into cash.").

10.    Accordingly, Shamrock submits with the possible exception of Laustsen, none of its cash is "cash collateral" within the meaning of 11 U.S.C. §363. Indeed, as set forth above, Shamrock disputes the validity and extent of security interests for

7

reasons other than the financing statements do not describe the dealer receivables in the collateral descriptions.

11. Out of an abundance of caution, however, Shamrock requests that the Court authorize Shamrock to use its cash – its inventory – to make advances, and to provide replacement liens to the various creditors asserting a security interest in the financing statements identified above on the same types of post-petition property of the estate against which each held purported security interests as of the Petition Date, to the extent of any diminution in value of their respective prepetition security interests, with the same force, effect and priority, as such prepetition security interests enjoyed in Shamrock's assets, and without prejudice to Shamrock's rights to contest the amount, validity, priority and extent of any and all security interests, liens and claims.

12. By granting the secured creditors the proposed adequate protection, the Court does not need to determine any rights of those creditors in Shamrock's cash to determine this motion. Since Shamrock's cash increases during the Budget period, all of the secured creditors are adequately protected by the replacement liens.

13. Moreover, Shamrock will adequately protect the putative security interests described above by preserving the going concern value of its assets – its dealer receivables – through continued operations. The entitlement to and measure of the protection required is always determined by the extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral during course of the bankruptcy case. See In re First South Savings Assoc., 820 F.2d 700, 710 (5th

Cir.1987). Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the debtor is using the cash collateral. See United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988). As noted, Shamrock suggests the value of its cash will increase, not erode, due to continued operations. Conversely, Shamrock believes its cash would diminish rapidly in a shutdown. Shamrock believe its customers would drastically reduce, if not cease entirely, payments to Shamrock on dealer receivables if Shamrock ceased operations and liquidated. Worse, Shamrock believes those customers likely would assert substantial claims against Shamrock that would dilute the claims held by unsecured noteholders and allowed deficiency claims, if any, of the secured creditors. Even a reduced distribution to creditors would be delayed significantly while claims by and amounts owed from Shamrock's customers and putative secured lenders are addressed. Shamrock believes creditors would incur substantial professional fees of attorneys, accountants and financial advisors whose services would be required for a prolonged period to resolve these issues in a liquidation, thereby further reducing the ultimate recovery by creditors.

14. Accordingly, because the continued preservation of the value of its dealer receivables provides the secured creditors with adequate protection for the use of cash collateral, Shamrock believes replacement liens on the cash (to the extent, if at all, the secured creditors have valid and enforceable security interests in Shamrock's prepetition cash) provide the requisite adequate protection under 11 U.S.C. §§361 and 363(e).

9

15. Pursuant to MLBR 4001-2(a), Shamrock submits that it believes that the Budget will be adequate to pay all administrative expenses due and payable during the period covered by the Budget

### REQUEST FOR EMERGENCY DETERMINATION

16. Shamrock requests that the Court grant this motion on an emergency basis pursuant to MLBR 9013-1(g)(1)(A), and submits as set forth above that entry of an interim order on an emergency basis pursuant to Fed.R.Bankr.P. 4001(b)(2) is necessary to avoid immediate and irreparable harm to its bankruptcy estate pending a final hearing. Shamrock's business depends for its survival on its liquidity and ability to meet the financing needs of its customers instantly. Shamrock likely will be forced to terminate operations unless the Court determines this Motion on an emergency basis under MLBR 9013-1(g)(1)(A) and conducts a preliminary hearing and enters the proposed interim order on an emergency basis pursuant to Fed.R.Bankr.P. 4001(b)(2).

17. Shamrock submits that no Committee has been appointed yet in this case and no party has filed a request for service of all pleadings and notices in this case. Accordingly, pursuant to MLBR 4001-2(b), service of this Motion is being made on all creditors who assert an interest in the cash collateral (all putative secured creditors), relevant federal and state taxing authorities, Shamrock's twenty (20) largest unsecured creditors, and the United States Trustee.

**WHEREFORE**, Shamrock prays that the Court allow this Motion, and on an emergency basis enter an interim order in the form substantially as attached as

Exhibit A, and after a final hearing enter the final order in the form substantially as set forth in attached Exhibit B, and further that the Court award Shamrock such other and further relief to which it may be entitled.

Dated:  March 13, 2021                    SHAMROCK FINANCE LLC

                                          By its proposed attorneys,


                                          */s/ Jeffrey D. Sternklar*
                                          Jeffrey D. Sternklar (BBO #549561)
                                          Jeffrey D. Sternklar LLC
                                          101 Federal Street, 19th Floor
                                          Boston, MA 02110
                                          617-207-7800 (telephone)
                                          617-507-6530 (facsimile)
                                          jeffrey@sternklarlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March, 2021, a true copy of the above document was served upon all interested parties and upon all parties who have filed their appearances and requested service of all pleadings filed in the case, as follows:

*VIA ECF:*

- **John Fitzgerald**    USTPRegion01.BO.ECF@USDOJ.GOV

*VIA E-MAIL:*

- **Thomas G. Nicholson, Esq. (for Keith Harris, CPA)**

*VIA FIRST CLASS MAIL, POSTAGE PREPAID*

| | |
|---|---|
| **John H. Ells Jr.**<br>**178 Lowell Street**<br>**Peabody, MA 01960** | **Rupert and/or Gail Ennis**<br>**545 Newburyport Tpk. #28**<br>**Rowley, MA 01983** |
| **Damian and Melanie Robert**<br>**401 NW 37th Place**<br>**Cape Coral, FL  33933** | **Kathy F. Pierce**<br>**7 Ridgeview Road**<br>**Topsfield, MA 01983** |
| **Rolanda Lee Sturtevant** | **Francis Green** |

| | |
|---|---|
| PO Box 1522<br>Manchester, MA 01944 | 1 Illsley Hill Road<br>W. Newbury, MA 01985 |
| Edward Christine Roman<br>2 Great Hill Drive<br>Topsfield, MA 01983 | Christine T. Karaffa<br>225A Fallon Rd. #218<br>Stoneham, MA 02180 |
| Laurie T. Cameron<br>64 Town Farm Road<br>Ipswich, MA 01938 | William Savoie<br>12471 Oakbend Dr.<br>Ft. Myers, FL 33905 |
| Gary Duguay<br>21 Gates Road<br>Middleton, MA 01949 | Walsh Construction<br>545 Newburyport Tpk. #28<br>Rowley, MA 01969 |
| Frank Foti<br>201 Slayton Farm Rd.<br>Stowe, VT 05672 | John Morin<br>19 Pleasant Street<br>Middleton, MA 01949 |
| PENSCO Trust Co f/b/o<br>Colette A. Willis<br>560 Mission Street<br>Suite 1300<br>San Francisco, CA 94105 | Todd Pierce<br>7B McGowan Circle<br>Lake George, NY 12845 |
| William O'Connor<br>76 Washington Street<br>Topsfield, MA 01983 | Maureen J. Brodeur<br>2 John Road<br>Peabody, MA 01960 |
| Benoit Brodeur<br>2 John Rd.<br>Peabody, MA 01960 | Thomas Bettencourt<br>Patricia Bettencourt<br>101 Lake Street<br>Peabody, MA 01960 |

*VIA FACSIMILE*

*Internal Revenue Service  (BY FACSMILE - 617-316-2605)*
*P.O. Box 7346*
*Philadelphia, PA 19101-7346*

*Massachusetts Department of Revenue (BY FACMILE 617-660-9886)*
*Attn.: Ms. Kendra Ye*
*Bankruptcy Unit*

***P.O. Box 9564***
***Boston, MA 02114-9564***

                                       /s/ *Jeffrey D. Sternklar*
                                       Jeffrey D. Sternklar