**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

In re:

SHAMROCK FINANCE LLC,

        Debtor

Chapter 11
Case No: 21-10315-FJB

**AD HOC COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO UNITED
STATES TRUSTEE'S MOTION FOR ENTRY OF AN ORDER
DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Now comes the Ad Hoc Committee of Unsecured Creditors (the "**Ad Hoc Committee**")

and submits this objection (the "**Objection**") to the United States Trustee's (the "**US Trustee**")

*United States Trustee's Motion For Entry of an Order Directing the Appointment of a Chapter*

*11 Trustee* [Doc. No. 82] (the "**Trustee Motion**").  In further support of the Objection, the Ad

Hoc Committee respectfully submits the following.

<u>SUMMARY OF ARGUMENT</u>

The Ad Hoc Committee opposes the appointment of a chapter 11 trustee because the

appointment of a chapter 11 trustee would have a materially adverse effect on the value of the

value of the Debtor's business and its reorganization prospects.  Based upon these concerns, the

Ad Hoc Committee requested, and the Debtor agreed (i) to appoint Mid-Market Management

Group ("**MMMG**") and William Dewey as the Debtor's chief restructuring officer ("**CRO**"), (ii)

to provide the Ad Hoc Committee, and any subsequently-appointed official committee, with full

access to non-privileged information regarding the Debtor's affairs, including any insider claims

and claims against Messrs. Pierce and Harris, (iii) to grant the Ad Hoc Committee, and any

subsequently-appointed official committee, standing to pursue insider claims and claims against

1

Messrs. Harris and Pierce, and (iv) to work with the Ad Hoc Committee, and any subsequently-appointed official committee, towards the formulation of a consensual plan of reorganization, including the assignment under such plan, to a creditors' representative of the Debtor's rights to pursue insider claims and causes of action (collectively, the "**Case Protocol**"). The Case Protocol is a pragmatic and effective way to address the concerns of the US Trustee without the potentially disastrous consequences and costs associated with the appointment of a chapter 11 trustee. The Case Protocol is also consistent with the flexible standard underlying section 1104, whereby Congress sought to accommodate two goals: (1) facilitation of a debtor's reorganization, and (2) protection of the interest of creditors. As such, there is no need to resort to the extraordinary remedy of appointing a chapter 11 trustee in this case.

### BACKGROUND

1.      On March 12, 2021 Shamrock Finance LLC (the "**Debtor**" or "**Shamrock**") filed a petition for relief under Chapter 11 of Title 11 of the United States Code, *et seq.* (the "**Bankruptcy Code**") in the Bankruptcy Court for the District of Massachusetts (the "**Court**").

2.      Shamrock is in the business of automobile floorplan financing. Shamrock borrows money from individuals and entities which it lends to New England area car dealerships to fund acquisition of inventory.

3.      The Debtor has scheduled $18,475,848.13 of liabilities, consisting principally of approximately $17,000,000.00 owed to eighty-six (86) individuals and their related entities who hold promissory notes (the "**Notes**") executed by the Debtor (the "**Noteholders**"). While most Noteholders have instruments entitled "Secured Promissory Notes", only six (6) Noteholders filed UCC-1 financing statements with the Secretary of the Commonwealth.[1] Of the six (6)

---

[1] Two other Noteholders have filed UCC-1 Financing Statements post-petition.

Noteholders who have filed UCC-1 financing statements, one (1) has lapsed and one (1) has filed a UCC-3 Termination.  As such, the Noteholders are almost entirely unsecured creditors.

4.      The Debtor filed a list of the twenty (20) largest unsecured creditors, each of which is a Noteholder [Doc. No. 1].  On or about March 16, 2021, the US Trustee sent questionnaires to the twenty (20) largest unsecured creditors regarding their interest in serving on an official creditors committee in this case.  Upon information and belief, many of the Noteholders solicited by the US Trustee, including multiple members of the Ad Hoc Committee, completed and returned the questionnaire to the US Trustee by March 24, 2021 stating their willingness to serve on an official committee.  To date, the US Trustee has not appointed an official committee.

5.      On April 6, 2021 the US Trustee filed the Trustee Motion, seeking the appointment of a chapter 11 trustee.  The Court has scheduled a non-evidentiary hearing on the Trustee Motion for April 21, 2021 at 11:00 A.M. [Doc. No. 86].

6.      Due to the absence of an official committee, on April 8, 2021 twenty (20) of the Noteholders held a meeting and formed the Ad Hoc Committee pending the appointment of an official committee.  Members of the Ad Hoc Committee include ten (10) of the twenty (20) largest unsecured creditors including the four (4) largest.[2]  Members of the Ad Hoc Committee hold approximately $7,500,000 of unsecured debt, or approximately forty-four percent (44%) of all unsecured debt.

7.      The following day, on April 9, 2021, the US Trustee filed its *Emergency Motion for Oral examination of Keith Harris and Production of Documents under Fed. R. Bankr. P.*

---

[2] Damian and Melanie Robert hold the second largest scheduled claim and assert to hold a valid security interest in the Debtor's assets.  Lawrence Kaplan was not scheduled in the twenty (20) largest unsecured creditors because he had filed a UCC-1 financing statement.  That statement has lapsed, and he is now the fourth largest unsecured creditor with scheduled debt of $707,274.19.

*2004*, [Doc. No. 98] (the "**2004 Motion**"), arguing, *inter alia*, that the US Trustee needed to examine Mr. Harris prior to the Court's April 21st non-evidentiary hearing on the Trustee Motion to determine Mr. Harris's role in soliciting the Noteholders to invest in the Debtor.

8.      On April 13, 2021, the Ad Hoc Committee filed its *Limited Objection to United States Trustee's Motion for Oral Examination of Keith Harris and Production of Documents Under Fed. R. Bankr. P. 2004* [Doc. No. 117], in which the Ad Hoc Committee set forth the Case Protocol agreed to between the Debtor and the Ad Hoc Committee.

9.      On April 14, 2021, the Court held a hearing on the 2004 Motion.  The Court declined to rule on the 2004 Motion at that time and has continued the hearing until April 21, at which time a hearing is scheduled on the Trustee Motion.

10.      In accordance with the Case Protocol, on April 16th, the Ad Hoc Committee requested that the Debtor install a CRO, and on April 16, 2021 the Debtor filed the *Amended Application to Employ Mid-Market Management Group as and to Designate William R. Dewey, IV as Chief Restructuring Officer* [Doc. No. 121] **(the "Amended CRO Application").**  The Amended CRO Application provides for the retention of MMMG as the Debtor's CRO.  Mr. Devaney will report directly to Mr. Dewey and Mr. Dewey will have the final say regarding the Debtor's operations and reorganization.

## LAW

11.      The moving party bears the burden of proving that cause exists to justify a chapter 11 trustee's appointment by "clear and convincing evidence".  *In re Munoz,* 544 B.R. 266, 275 (Bankr. D.P.R. 2016); *In re ProFlo Indus., LLC*, 2018 Bankr. LEXIS 229, at *11 (Bankr. N.D. Ohio Jan. 29, 2018).  The appointment of a chapter 11 trustee is the exception and not the rule. *See In re China Fishery Group, Ltd.,* 2016 Bankr. LEXIS 3852, at *9 (Bankr. S.D.N.Y. 2016

Oct. 28, 2016).  "[A]ppointment of a trustee is a fact-intensive determination and must be made

on a case-by-case basis." *United Sur. & Indemn. Co. v Lopez-Munoz (In re Lopez-Munoz)*, 553

B.R. 173, 190 (1st Cir. B.A.P. 2016), *aff'd* 866 F.3d 487 (1st Cir. 2017).

12.    Section 1104 of the Bankruptcy Code describes the limited circumstances in

which a chapter 11 trustee may be appointed.  Under Section 1104(a)(1), a chapter 11 trustee

shall be appointed

> "for cause, including fraud, dishonesty, incompetence, or gross mismanagement
> of the affairs of the debtor by current management, either before or after the
> commencement of the case, or similar cause, but not including the number of
> holders of securities of the debtor or the amount of assets or liabilities of the
> debtor."

13.    Although section 1104 provides that a trustee "shall" be appointed "for cause,"

courts have wide discretion in determining whether certain conduct rises to the level of "cause"

for purposes of Section 1104(a).  *See In re 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr.

S.D.N.Y. 2007); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 2192, at *17 (Bankr. S.D.N.Y. May

16, 2003).  Indeed, although this section appears to suggest that chapter 11 trustees might

frequently be appointed, the appointment of a chapter 11 trustee is an extraordinary remedy

which rarely occurs.  *See, e.g. In re China Fishery Grp. Ltd*., 2016 Bankr. LEXIS 3852, at *9

(Bankr. S.D.N.Y. Oct. 28, 2016); *In re Bergeron*, 2013 Bankr. LEXIS 4556, at *19 (Bankr.

E.D.N.C. Oct. 31, 2013).

14.    The legislative history makes clear that section 1104 is intended to be flexibly

read and applied to accommodate two goals: (1) facilitation of the debtor's reorganization, and

(2) protection of the public interest and of creditors.  H.R. Rep. No. 595, 95th Cong., 1st Sess.

232-33 (1977).  As such, "it would seem that a court considering a motion to appoint a trustee

should generally balance the benefit to be gained from such an appointment against the detriment

to the reorganization effort and the rights of the debtor that may result from such an appointment." Richard Levin & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 1104.02 [3][a] (Richard Levin & Henry J. Sommer, 16th ed. 2021). When considering the detriments that the appointment of a chapter 11 trustee would have on a debtor's reorganization prospect, courts recognize the reality that appointing a chapter 11 trustee has serious adverse consequences for a debtor. *See In re Skytec, Inc.,* 610 B.R. 14, 27 (Bankr. D.P.R. 2019) (court denies to appoint a chapter 11 trustee in light of practical concerns with such an appointment); *In re Leslie Fay Cos.,* 207 B.R. 764, 784 (Bankr. S.D.N.Y. 1997) (appointment of a chapter 11 trustee is an "expensive" route).

15.     Even where there may have been been fraud, dishonesty, incompetence, or gross mismanagement by a debtor, a chapter 11 trustee should not be appointed where current management is free from the taint of prior management. *See, e.g. In re 1031 Tax Group, Inc.*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007). This is because the purpose of chapter 11 is not to punish a debtor for mismanaging its affairs, but to "give the debtor a 'second chance' at business success." Richard Levin & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 1104.02 [3][c][i] (Richard Levin & Henry J. Sommer, 16th ed. 2021) (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 220 (1977)).

16.     When determining whether there's been mismanagement or gross incompetence, a debtor's effort to appoint a CRO evidences that a debtor is acting responsibly. *See, e.g. In re BR Festivals LLC*, 2014 Bankr. LEXIS 1276, at *1 (Bankr. N.D. Cal. Mar. 28, 2014) ("The court does not agree with the U.S. Trustee that the act of seeking a CRO is evidence of mismanagement. Quite the contrary, it is evidence of acting responsibly.")

17.     Section 1104(a)(2) provides that a chapter 11 trustee should only be appointed if the appointment is in the interest of creditors. 11 U.S.C. § 1104(a)(2).

18.     Courts "employ a balancing test whereby they seek to determine whether 'the benefits to all interests of the estate to be derived from a trustee outweigh the detriments to the estate.'" *In re West Virginia High Tech. Consortium Found.,* 2017 Bankr. LEXIS 1098, at *5 (Bankr. N.D. W.Va. Apr. 21, 2017) (*citing* 7 *Collier on Bankruptcy* ¶ 1104.02[3][d][ii]). Indeed, courts "eschew rigid absolutes and look [] to the practical realities and necessities." *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (*citing In re Hotel Assoc's*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980)).

19.     The balancing test considers the practical consequences and effects that would flow from the appointment of a chapter 11 trustee. *See In re Skytec, Inc.*, 610 B.R. at 27. When the appointment of a chapter 11 trustee could very well lead to a failed reorganization and the conversion of a case to chapter 7, the appointment of a chapter 11 trustee would not be in the interest of creditors. *Id.*

20.     The particular circumstances of the Debtor's business and the expertise necessary to administer the businesses should also be considered before a chapter 11 trustee is appointed. *See, e.g. In re RMS Titanic, Inc.*, 2018 Bankr. LEXIS 2094, at *7-8 (Bankr. M.D. Fla. Jun. 29, 2018).

21.     Courts have also considered the delay and expense that the appointment of a chapter 11 trustee can cause for a debtor's estate. *See In re Adelphia Communs. Corp.*, 336 B.R. 610, 640 (Bankr. S.D.N.Y. 2006). Courts should consider these costs when deciding whether to appoint a chapter 11 trustee under Section 1104(a)(2). In a specialized business, the costs of appointing a chapter 11 trustee, especially one unfamiliar with the business at issue, will only

increase the expense of appointing a trustee.  *See, e.g. In re RMS Titanic, Inc.*, 2018 Bankr.

LEXIS 2094, at *7-8.

**ARGUMENT**

A.  **The Case Protocol eliminates any need for a chapter 11 trustee.**

22.    The Case Protocol developed by the Ad Hoc Committee and accepted by the

Debtor eliminates the need for the "extraordinary remedy" of appointing a chapter 11 trustee in

this case.  The Case Protocol provides that MMMG will be appointed as the Debtor's CRO, that

the Ad Hoc Committee, and any subsequently-appointed official committee, will have full access

to non-privileged information regarding the Debtor's affairs, including any insider claims and

claims against Messrs. Pierce and Harris, that the Ad Hoc Committee and any subsequently-

appointed official committee will have standing to pursue insider claims and claims against

Messrs. Harris and Pierce, and that the Debtor will work with the Ad Hoc Committee, and any

subsequently-appointed official committee, towards the formulation of a consensual plan of

reorganization to include, among other things, assignment, pursuant to a plan, to a creditors'

representative, of the Debtor's rights to pursue insider claims and claims.  The Case Protocol

strikes the balance which Congress tried to enact with section 1104—it facilitates the debtor's

reorganization, and protects the interest of creditors and the public.  H.R. Rep. No. 595, 95th

Cong., 1st Sess. 232-33 (1977).

23.    Appointing a chapter 11 trustee, would likely be the death knell of the Debtor's

reorganization and should be avoided if other means exist to accomplish the purposes of

appointing a chapter 11 trustee.  *See, e.g. In re Skytec Inc.,* 610 B.R. 14.  The CRO's

appointment and the grant of derivative standing to the Ad Hoc Committee and any

subsequently-appointed official committee or a creditor's representative under a plan, affords

8

appropriate protections to the estate and protects the interest of creditors. The appointment of a

chapter 11 trustee, along with other trustee professionals, will result in the estate incurring

substantial administrative expenses which will be an impediment to a successful reorganization

and creditors' recovery.

24.     Mr. Dewey, as CRO, is capable of leading the Debtor's reorganization efforts and

facilitating a successful reorganization. Mr. Dewey has substantial knowledge of the Debtor's

business and significant experience in automotive floorplan financing. Mr. Dewey has been

assisting the Debtor in its turn-around efforts since his retention in December, 2020.

25.     Under these circumstances where the Case Protocol provides for the active

involvement and oversight by the Ad Hoc Committee and any official committee, there is no

need to appoint a chapter 11 trustee because "[w]here a case has an active creditors committee

functioning effectively and working well with the debtor . . . there is little benefit in appointing a

trustee." 374 B.R. at 91. This is the situation here, and the Debtor and the Ad Hoc Committee

are working towards a successful reorganization with appropriate protections for the benefit of

creditors. There is no need to insert a trustee where the Debtor is cooperating with, and being

overseen by, an active creditors committee.

B.  **The appointment of a chapter 11 trustee is not in the interest of creditors.**

26.     Due to the absence of an official committee, on April 8, 2021 twenty (20) of the

Noteholders held a meeting and formed the Ad Hoc Committee. Members of the Ad Hoc

Committee now include ten (10) of the twenty (20) largest unsecured creditors including the four

(4) largest.  Members of the Ad Hoc Committee now hold approximately $7,500,000 of

unsecured debt, or approximately forty-four percent (44%) of all unsecured debt.[3]

27.     At the April 8 meeting, the Ad Hoc Committee voted unanimously to oppose the

Trustee Motion because the Ad Hoc Committee believes that the appointment of a Chapter 11

trustee would have a materially adverse impact upon the Debtor's business and reorganization

prospects.  Kevin Devaney is the Debtor's sole member and manager and is the person most

familiar with the day-to-day operations of the Debtor.  Among other things, the Ad Hoc

Committee believes that Mr. Devaney's relationships with the used car dealer network and his

knowledge and experience in the used car market are essential to the preservation of the value of

the Debtor's business.  The Ad Hoc Committee believes that replacement of Mr. Devaney with a

Chapter 11 trustee would ultimately lead to the forced sale or liquidation of the Debtor's

business that would result in substantial loss of value.  Further, the Ad Hoc Committee believes

that the appointment of a Chapter 11 trustee along with additional professionals would result in

significant costs that would reduce the recovery to creditors.

28.     The creditors' hope for repayment, and the Debtor's prospect of a successful

reorganization, hinges on the Debtor's ability to maintain a good relationship with its dealership

customers and receive payments on its receivables.  Replacing Mr. Devaney at this critical

moment will result in strained relationships with the Debtor's customers and prolonged issues in

collections which will eliminate any prospect for a successful reorganization.

---

[3] The Noteholders are largely unperfected and / or undersecured creditors.  Although some of the Noteholders were
given documents entitled "Secured Promissory Notes", only six (6) Noteholders filed UCC-1 financing statements
with the Secretary of the Commonwealth.  The Noteholders are largely unperfected because most have not filed
UCC-1 financing statements.  For those Noteholders who have filed UCC-1 financing statements, they are largely
undersecured, because the value of the Debtor's business is $9,536,255.19 and the Debtor has debts of
$18,475,848.13.  Therefore, the Noteholders are largely either eligible to serve as unperfected or undersecured
creditors.

29.    A liquidation will result in a spike in defaults by customers with the attendant increase in litigation costs and likely reduction of recovery by creditors, as well as increases in claims by Shamrock's customers that will further dilute the claims pool.  As such, a liquidation is especially disastrous and likely the worst case scenario for creditors.

30.    In sum, appointing a chapter 11 trustee is not in the creditors' best interests, and they recognize that.  The Ad Hoc Committee believes that, by adoption of the Case Protocol, the Debtor has taken appropriate measures to address the US Trustee's concerns and that there is otherwise no reason to appoint a chapter 11 trustee in this case.  It appears that the Debtor's business is otherwise sound and that it can operate profitably.  For these reasons, terminating Mr. Devaney and installing a chapter 11 trustee would only serve to reduce the prospect of a successful reorganization and harm the Debtor's creditors.

**[remainder of page intentionally left blank]**

**WHEREFORE**, the Ad Hoc Committee respectfully requests that the Court deny the

*United States Trustee's Motion For Entry of an Order Directing the Appointment of a Chapter*

*11 Trustee* [Doc. No. 82], and grant such other and further relief as is necessary and proper under

the circumstances.

Respectfully Submitted,

THE AD HOC COMMITTEE OF
UNSECURED CREDITORS,
By its Attorneys,

*/s/ Harold B. Murphy*

Dated:     April 20, 2021

Harold B. Murphy (BBO #326610)
Marc P. Tetreault Jr. (BBO #707794)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
Telephone:  (617) 423-0400
Facsimile:   (617) 556-8985
Email:  hmurphy@murphyking.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Harold B. Murphy, do hereby certify that on this 20th day of April, 2021 I have filed

this Objection with the Court and caused copies thereof to be served through the Court's

CM/ECF System upon all such parties entitled to notice thereunder.


*<u>/s/ Harold B. Murphy</u>*

Dated: April 20, 2021                                    Harold B. Murphy

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In re:

SHAMROCK FINANCE LLC,

        Debtor

Chapter 11
Case No: 21-10315-FJB

## AD HOC COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO UNITED STATES TRUSTEE'S MOTION FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

Now comes the Ad Hoc Committee of Unsecured Creditors (the "**Ad Hoc Committee**") and submits this objection (the "**Objection**") to the United States Trustee's (the "**US Trustee**") *United States Trustee's Motion For Entry of an Order Directing the Appointment of a Chapter 11 Trustee* [Doc. No. 82] (the "**Trustee Motion**").  In further support of the Objection, the Ad Hoc Committee respectfully submits the following.

### SUMMARY OF ARGUMENT

The Ad Hoc Committee opposes the appointment of a chapter 11 trustee because the appointment of a chapter 11 trustee would have a materially adverse effect on the value of the value of the Debtor's business and its reorganization prospects.  Based upon these concerns, the Ad Hoc Committee requested, and the Debtor agreed (i) to appoint Mid-Market Management Group ("**MMMG**") and William Dewey as the Debtor's chief restructuring officer ("**CRO**"), (ii) to provide the Ad Hoc Committee, and any subsequently-appointed official committee, with full access to non-privileged information regarding the Debtor's affairs, including any insider claims and claims against Messrs. Pierce and Harris, (iii) to grant the Ad Hoc Committee, and any subsequently-appointed official committee, standing to pursue insider claims and claims against

1

Messrs. Harris and Pierce, and (iv) to work with the Ad Hoc Committee, and any subsequently-

appointed official committee, towards the formulation of a consensual plan of reorganization,

including the assignment under such plan, to a creditors' representative of the Debtor's rights to

pursue insider claims and causes of action (collectively, the "**Case Protocol**").  The Case

Protocol is a pragmatic and effective way to address the concerns of the US Trustee without the

potentially disastrous consequences and costs associated with the appointment of a chapter 11

trustee.  The Case Protocol is also consistent with the flexible standard underlying section 1104,

whereby Congress sought to accommodate two goals: (1) facilitation of a debtor's

reorganization, and (2) protection of the interest of creditors.  As such, there is no need to resort

to the extraordinary remedy of appointing a chapter 11 trustee in this case.

### BACKGROUND

1.      On March 12, 2021 Shamrock Finance LLC (the "**Debtor**" or "**Shamrock**") filed

a petition for relief under Chapter 11 of Title 11 of the United States Code, *et seq.* (the

"**Bankruptcy Code**") in the Bankruptcy Court for the District of Massachusetts (the "**Court**").

2.      Shamrock is in the business of automobile floorplan financing.  Shamrock

borrows money from individuals and entities which it lends to New England area car dealerships

to fund acquisition of inventory.

3.      The Debtor has scheduled $18,475,848.13 of liabilities, consisting principally of

approximately $17,000,000.00 owed to eighty-six (86) individuals and their related entities who

hold promissory notes (the "**Notes**") executed by the Debtor (the "**Noteholders**").  While most

Noteholders have instruments entitled "Secured Promissory Notes", only six (6) Noteholders

filed UCC-1 financing statements with the Secretary of the Commonwealth.[1]  Of the six (6)

---

[1] Two other Noteholders have filed UCC-1 Financing Statements post-petition.

Noteholders who have filed UCC-1 financing statements, one (1) has lapsed and one (1) has filed a UCC-3 Termination. As such, the Noteholders are almost entirely unsecured creditors.

4. The Debtor filed a list of the twenty (20) largest unsecured creditors, each of which is a Noteholder [Doc. No. 1]. On or about March 16, 2021, the US Trustee sent questionnaires to the twenty (20) largest unsecured creditors regarding their interest in serving on an official creditors committee in this case. Upon information and belief, many of the Noteholders solicited by the US Trustee, including multiple members of the Ad Hoc Committee, completed and returned the questionnaire to the US Trustee by March 24, 2021 stating their willingness to serve on an official committee. To date, the US Trustee has not appointed an official committee.

5. On April 6, 2021 the US Trustee filed the Trustee Motion, seeking the appointment of a chapter 11 trustee. The Court has scheduled a non-evidentiary hearing on the Trustee Motion for April 21, 2021 at 11:00 A.M. [Doc. No. 86].

6. Due to the absence of an official committee, on April 8, 2021 twenty (20) of the Noteholders held a meeting and formed the Ad Hoc Committee pending the appointment of an official committee. Members of the Ad Hoc Committee include ten (10) of the twenty (20) largest unsecured creditors including the four (4) largest.[2] Members of the Ad Hoc Committee hold approximately $7,500,000 of unsecured debt, or approximately forty-four percent (44%) of all unsecured debt.

7. The following day, on April 9, 2021, the US Trustee filed its *Emergency Motion for Oral examination of Keith Harris and Production of Documents under Fed. R. Bankr. P.*

---

[2] Damian and Melanie Robert hold the second largest scheduled claim and assert to hold a valid security interest in the Debtor's assets. Lawrence Kaplan was not scheduled in the twenty (20) largest unsecured creditors because he had filed a UCC-1 financing statement. That statement has lapsed, and he is now the fourth largest unsecured creditor with scheduled debt of $707,274.19.

*2004*, [Doc. No. 98] (the "**2004 Motion**"), arguing, *inter alia*, that the US Trustee needed to examine Mr. Harris prior to the Court's April 21st non-evidentiary hearing on the Trustee Motion to determine Mr. Harris's role in soliciting the Noteholders to invest in the Debtor.

8.      On April 13, 2021, the Ad Hoc Committee filed its *Limited Objection to United States Trustee's Motion for Oral Examination of Keith Harris and Production of Documents Under Fed. R. Bankr. P. 2004* [Doc. No. 117], in which the Ad Hoc Committee set forth the Case Protocol agreed to between the Debtor and the Ad Hoc Committee.

9.      On April 14, 2021, the Court held a hearing on the 2004 Motion.  The Court declined to rule on the 2004 Motion at that time and has continued the hearing until April 21, at which time a hearing is scheduled on the Trustee Motion.

10.      In accordance with the Case Protocol, on April 16th, the Ad Hoc Committee requested that the Debtor install a CRO, and on April 16, 2021 the Debtor filed the *Amended Application to Employ Mid-Market Management Group as and to Designate William R. Dewey, IV as Chief Restructuring Officer* [Doc. No. 121] **(**the "**Amended CRO Application**")**.**  The Amended CRO Application provides for the retention of MMMG as the Debtor's CRO.  Mr. Devaney will report directly to Mr. Dewey and Mr. Dewey will have the final say regarding the Debtor's operations and reorganization.

## LAW

11.      The moving party bears the burden of proving that cause exists to justify a chapter 11 trustee's appointment by "clear and convincing evidence".  *In re Munoz,* 544 B.R. 266, 275 (Bankr. D.P.R. 2016); *In re ProFlo Indus., LLC*, 2018 Bankr. LEXIS 229, at *11 (Bankr. N.D. Ohio Jan. 29, 2018).  The appointment of a chapter 11 trustee is the exception and not the rule. *See In re China Fishery Group, Ltd.,* 2016 Bankr. LEXIS 3852, at *9 (Bankr. S.D.N.Y. 2016

Oct. 28, 2016).  "[A]ppointment of a trustee is a fact-intensive determination and must be made

on a case-by-case basis." *United Sur. & Indemn. Co. v Lopez-Munoz (In re Lopez-Munoz)*, 553

B.R. 173, 190 (1st Cir. B.A.P. 2016), *aff'd* 866 F.3d 487 (1st Cir. 2017).

12.     Section 1104 of the Bankruptcy Code describes the limited circumstances in

which a chapter 11 trustee may be appointed.  Under Section 1104(a)(1), a chapter 11 trustee

shall be appointed

> "for cause, including fraud, dishonesty, incompetence, or gross mismanagement
> of the affairs of the debtor by current management, either before or after the
> commencement of the case, or similar cause, but not including the number of
> holders of securities of the debtor or the amount of assets or liabilities of the
> debtor."

13.     Although section 1104 provides that a trustee "shall" be appointed "for cause,"

courts have wide discretion in determining whether certain conduct rises to the level of "cause"

for purposes of Section 1104(a).  *See In re 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr.

S.D.N.Y. 2007); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 2192, at *17 (Bankr. S.D.N.Y. May

16, 2003).  Indeed, although this section appears to suggest that chapter 11 trustees might

frequently be appointed, the appointment of a chapter 11 trustee is an extraordinary remedy

which rarely occurs.  *See, e.g. In re China Fishery Grp. Ltd.*, 2016 Bankr. LEXIS 3852, at *9

(Bankr. S.D.N.Y. Oct. 28, 2016); *In re Bergeron*, 2013 Bankr. LEXIS 4556, at *19 (Bankr.

E.D.N.C. Oct. 31, 2013).

14.     The legislative history makes clear that section 1104 is intended to be flexibly

read and applied to accommodate two goals: (1) facilitation of the debtor's reorganization, and

(2) protection of the public interest and of creditors.  H.R. Rep. No. 595, 95th Cong., 1st Sess.

232-33 (1977).  As such, "it would seem that a court considering a motion to appoint a trustee

should generally balance the benefit to be gained from such an appointment against the detriment

to the reorganization effort and the rights of the debtor that may result from such an appointment." Richard Levin & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 1104.02 [3][a] (Richard Levin & Henry J. Sommer, 16th ed. 2021). When considering the detriments that the appointment of a chapter 11 trustee would have on a debtor's reorganization prospect, courts recognize the reality that appointing a chapter 11 trustee has serious adverse consequences for a debtor. *See In re Skytec, Inc.,* 610 B.R. 14, 27 (Bankr. D.P.R. 2019) (court denies to appoint a chapter 11 trustee in light of practical concerns with such an appointment); *In re Leslie Fay Cos.,* 207 B.R. 764, 784 (Bankr. S.D.N.Y. 1997) (appointment of a chapter 11 trustee is an "expensive" route).

15.     Even where there may have been been fraud, dishonesty, incompetence, or gross mismanagement by a debtor, a chapter 11 trustee should not be appointed where current management is free from the taint of prior management. *See, e.g. In re 1031 Tax Group, Inc.*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007). This is because the purpose of chapter 11 is not to punish a debtor for mismanaging its affairs, but to "give the debtor a 'second chance' at business success." Richard Levin & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 1104.02 [3][c][i] (Richard Levin & Henry J. Sommer, 16th ed. 2021) (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 220 (1977)).

16.     When determining whether there's been mismanagement or gross incompetence, a debtor's effort to appoint a CRO evidences that a debtor is acting responsibly. *See, e.g. In re BR Festivals LLC*, 2014 Bankr. LEXIS 1276, at *1 (Bankr. N.D. Cal. Mar. 28, 2014) ("The court does not agree with the U.S. Trustee that the act of seeking a CRO is evidence of mismanagement. Quite the contrary, it is evidence of acting responsibly.")

17.     Section 1104(a)(2) provides that a chapter 11 trustee should only be appointed if the appointment is in the interest of creditors.  11 U.S.C. § 1104(a)(2).

18.     Courts "employ a balancing test whereby they seek to determine whether 'the benefits to all interests of the estate to be derived from a trustee outweigh the detriments to the estate.'"  *In re West Virginia High Tech. Consortium Found.,* 2017 Bankr. LEXIS 1098, at *5 (Bankr. N.D. W.Va. Apr. 21, 2017) (*citing* 7 *Collier on Bankruptcy* ¶ 1104.02[3][d][ii]).  Indeed, courts "eschew rigid absolutes and look [] to the practical realities and necessities."  *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (*citing In re Hotel Assoc's*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980)).

19.     The balancing test considers the practical consequences and effects that would flow from the appointment of a chapter 11 trustee.  *See In re Skytec, Inc.*, 610 B.R. at 27.  When the appointment of a chapter 11 trustee could very well lead to a failed reorganization and the conversion of a case to chapter 7, the appointment of a chapter 11 trustee would not be in the interest of creditors.  *Id.*

20.     The particular circumstances of the Debtor's business and the expertise necessary to administer the businesses should also be considered before a chapter 11 trustee is appointed.  *See, e.g. In re RMS Titanic, Inc.*, 2018 Bankr. LEXIS 2094, at *7-8 (Bankr. M.D. Fla. Jun. 29, 2018).

21.     Courts have also considered the delay and expense that the appointment of a chapter 11 trustee can cause for a debtor's estate.  *See In re Adelphia Communs. Corp.*, 336 B.R. 610, 640 (Bankr. S.D.N.Y. 2006).  Courts should consider these costs when deciding whether to appoint a chapter 11 trustee under Section 1104(a)(2).  In a specialized business, the costs of appointing a chapter 11 trustee, especially one unfamiliar with the business at issue, will only

7

increase the expense of appointing a trustee.  *See, e.g. In re RMS Titanic, Inc.*, 2018 Bankr.

LEXIS 2094, at *7-8.

**ARGUMENT**

A.  **The Case Protocol eliminates any need for a chapter 11 trustee.**

22.     The Case Protocol developed by the Ad Hoc Committee and accepted by the

Debtor eliminates the need for the "extraordinary remedy" of appointing a chapter 11 trustee in

this case.  The Case Protocol provides that MMMG will be appointed as the Debtor's CRO, that

the Ad Hoc Committee, and any subsequently-appointed official committee, will have full access

to non-privileged information regarding the Debtor's affairs, including any insider claims and

claims against Messrs. Pierce and Harris, that the Ad Hoc Committee and any subsequently-

appointed official committee will have standing to pursue insider claims and claims against

Messrs. Harris and Pierce, and that the Debtor will work with the Ad Hoc Committee, and any

subsequently-appointed official committee, towards the formulation of a consensual plan of

reorganization to include, among other things, assignment, pursuant to a plan, to a creditors'

representative, of the Debtor's rights to pursue insider claims and claims.  The Case Protocol

strikes the balance which Congress tried to enact with section 1104—it facilitates the debtor's

reorganization, and protects the interest of creditors and the public.  H.R. Rep. No. 595, 95th

Cong., 1st Sess. 232-33 (1977).

23.     Appointing a chapter 11 trustee, would likely be the death knell of the Debtor's

reorganization and should be avoided if other means exist to accomplish the purposes of

appointing a chapter 11 trustee.  *See, e.g. In re Skytec Inc.,* 610 B.R. 14.  The CRO's

appointment and the grant of derivative standing to the Ad Hoc Committee and any

subsequently-appointed official committee or a creditor's representative under a plan, affords

8

appropriate protections to the estate and protects the interest of creditors.  The appointment of a

chapter 11 trustee, along with other trustee professionals, will result in the estate incurring

substantial administrative expenses which will be an impediment to a successful reorganization

and creditors' recovery.

24.     Mr. Dewey, as CRO, is capable of leading the Debtor's reorganization efforts and

facilitating a successful reorganization.  Mr. Dewey has substantial knowledge of the Debtor's

business and significant experience in automotive floorplan financing.  Mr. Dewey has been

assisting the Debtor in its turn-around efforts since his retention in December, 2020.

25.     Under these circumstances where the Case Protocol provides for the active

involvement and oversight by the Ad Hoc Committee and any official committee, there is no

need to appoint a chapter 11 trustee because "[w]here a case has an active creditors committee

functioning effectively and working well with the debtor . . . there is little benefit in appointing a

trustee." 374 B.R. at 91.  This is the situation here, and the Debtor and the Ad Hoc Committee

are working towards a successful reorganization with appropriate protections for the benefit of

creditors.  There is no need to insert a trustee where the Debtor is cooperating with, and being

overseen by, an active creditors committee.

B.  **The appointment of a chapter 11 trustee is not in the interest of creditors.**

26.     Due to the absence of an official committee, on April 8, 2021 twenty (20) of the

Noteholders held a meeting and formed the Ad Hoc Committee.  Members of the Ad Hoc

Committee now include ten (10) of the twenty (20) largest unsecured creditors including the four

(4) largest.  Members of the Ad Hoc Committee now hold approximately $7,500,000 of

unsecured debt, or approximately forty-four percent (44%) of all unsecured debt.[3]

27.     At the April 8 meeting, the Ad Hoc Committee voted unanimously to oppose the

Trustee Motion because the Ad Hoc Committee believes that the appointment of a Chapter 11

trustee would have a materially adverse impact upon the Debtor's business and reorganization

prospects.  Kevin Devaney is the Debtor's sole member and manager and is the person most

familiar with the day-to-day operations of the Debtor.  Among other things, the Ad Hoc

Committee believes that Mr. Devaney's relationships with the used car dealer network and his

knowledge and experience in the used car market are essential to the preservation of the value of

the Debtor's business.  The Ad Hoc Committee believes that replacement of Mr. Devaney with a

Chapter 11 trustee would ultimately lead to the forced sale or liquidation of the Debtor's

business that would result in substantial loss of value.  Further, the Ad Hoc Committee believes

that the appointment of a Chapter 11 trustee along with additional professionals would result in

significant costs that would reduce the recovery to creditors.

28.     The creditors' hope for repayment, and the Debtor's prospect of a successful

reorganization, hinges on the Debtor's ability to maintain a good relationship with its dealership

customers and receive payments on its receivables.  Replacing Mr. Devaney at this critical

moment will result in strained relationships with the Debtor's customers and prolonged issues in

collections which will eliminate any prospect for a successful reorganization.

---

[3] The Noteholders are largely unperfected and / or undersecured creditors.  Although some of the Noteholders were
given documents entitled "Secured Promissory Notes", only six (6) Noteholders filed UCC-1 financing statements
with the Secretary of the Commonwealth.  The Noteholders are largely unperfected because most have not filed
UCC-1 financing statements.  For those Noteholders who have filed UCC-1 financing statements, they are largely
undersecured, because the value of the Debtor's business is $9,536,255.19 and the Debtor has debts of
$18,475,848.13.  Therefore, the Noteholders are largely either eligible to serve as unperfected or undersecured
creditors.

29.     A liquidation will result in a spike in defaults by customers with the attendant increase in litigation costs and likely reduction of recovery by creditors, as well as increases in claims by Shamrock's customers that will further dilute the claims pool.  As such, a liquidation is especially disastrous and likely the worst case scenario for creditors.

30.     In sum, appointing a chapter 11 trustee is not in the creditors' best interests, and they recognize that.  The Ad Hoc Committee believes that, by adoption of the Case Protocol, the Debtor has taken appropriate measures to address the US Trustee's concerns and that there is otherwise no reason to appoint a chapter 11 trustee in this case.  It appears that the Debtor's business is otherwise sound and that it can operate profitably.  For these reasons, terminating Mr. Devaney and installing a chapter 11 trustee would only serve to reduce the prospect of a successful reorganization and harm the Debtor's creditors.

**[remainder of page intentionally left blank]**

11

**WHEREFORE**, the Ad Hoc Committee respectfully requests that the Court deny the

*United States Trustee's Motion For Entry of an Order Directing the Appointment of a Chapter*

*11 Trustee* [Doc. No. 82], and grant such other and further relief as is necessary and proper under

the circumstances.

Respectfully Submitted,

THE AD HOC COMMITTEE OF
UNSECURED CREDITORS,
By its Attorneys,

*/s/ Harold B. Murphy*
Harold B. Murphy (BBO #326610)
Marc P. Tetreault Jr. (BBO #707794)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
Telephone:  (617) 423-0400
Facsimile:   (617) 556-8985
Email:  hmurphy@murphyking.com

Dated:      April 20, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Harold B. Murphy, do hereby certify that on this 20th day of April, 2021 I have filed

this Objection with the Court and caused copies thereof to be served through the Court's

CM/ECF System upon all such parties entitled to notice thereunder.


*/s/ Harold B. Murphy*

Dated: April 20, 2021                              Harold B. Murphy