

*EXECUTION VERSION*

**FIRST AMENDED AND RESTATED ASSET PURCHASE AGREEMENT**

**Dated as of February 7, 2022**

**By and Between**

**LENDBUZZ, INC.**

**as Buyer,**

**and**

**SHAMROCK FINANCE LLC**

**as Seller**

*EXECUTION VERSION*

# INDEX OF EXHIBITS

EXHIBIT A                    PURCHASED ASSETS

EXHIBIT B                    FORM OF BILL OF SALE AND ASSUMPTION AND
                             ASSIGNMENT AGREEMENT

EXHIBIT C                    BIDDING PROCEDURES ORDER

EXHIBIT D                    (Reserved)

EXHIBIT E                    MATERIAL ECONOMIC TERMS TO DEVANEY
                             EMPLOYMENT AGREEMENT

*EXECUTION VERSION*

## FIRST AMENDED AND RESTATED ASSET PURCHASE AGREEMENT

This First Amended and Restated Asset Purchase Agreement (this "Agreement") is entered into as of February 7, 2022, by and between Shamrock Finance LLC, a Massachusetts limited liability company (the "Seller" or the "Debtor," as applicable) and Lendbuzz, Inc., a Massachusetts corporation (the "Lendbuzz"), or any affiliate designated by the Buyer (collectively with Lendbuzz, the "Buyer").  Seller and Buyer are collectively referred to in this Agreement as the "Parties" and individually as a "Party".  For purposes of this Agreement, capitalized terms used herein shall have the meanings set forth herein or in Article IX.

## RECITALS

WHEREAS, on March 12, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), thereby commencing case number 21-10315-FJB in the Bankruptcy Court (the "Bankruptcy Case");

WHEREAS, the Debtor is managing its properties and operating its business as a "debtor in possession" in the Bankruptcy Case under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code;

WHEREAS, the Debtor is an automobile inventory "floor plan" lender that provides floorplan financing to independent car dealerships in the New England area.

WHEREAS, the Buyer wishes to purchase the Purchased Assets and assume the Assumed Liabilities from the Seller and the Seller wishes to sell, convey, assign, and transfer to the Buyer the Purchased Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with sections 105 and 363 of the Bankruptcy Code, along with other applicable provisions of the Bankruptcy Code;

WHEREAS, the Purchased Assets and Assumed Liabilities shall be purchased and assumed by the Buyer pursuant to a Sale Order approving such sale, free and clear of all Claims, Liens, Encumbrances, and other interests, pursuant to sections 105 and 363 of the Bankruptcy Code, and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules");

WHEREAS, the Seller has determined that it is advisable and in the best interests of the Seller and its constituencies to enter into this Agreement and to consummate the transactions contemplated hereby, subject to entry of a Sale Order, and such governing body has approved of same;

*EXECUTION VERSION*

WHERAS, the parties have entered into an Asset Purchase Agreement as of February 2, 2022 (the "Original APA"); and

WHEREAS, the parties with to amend and restate the Original APA in its entirety pursuant to this Agreement, such that this Agreement shall be the sole enforceable agreement among the parties relating to the transactions described below.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants, and agreements set forth in this Agreement, and for good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Seller and Buyer hereby agree as follows:

ARTICLE I.

PURCHASE AND SALE OF THE PURCHASED ASSETS; ASSUMPTION OF
THE ASSUMED LIABILITIES

1.1A    Original APA Replaced by this Agreement.  The Original APA shall be and hereby is amended in its entirely and replaced with this Agreement.  This Original APA shall be null, void and of no further force and effect and shall be replaced, restated and amended in its entirety by this Agreement.

1.1.    Purchase and Sale of the Purchased Assets.  Pursuant to sections 105 and 363 of the Bankruptcy Code, and on the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller shall sell, transfer, assign, convey, and deliver to Buyer, and Buyer (or a designee of the Buyer in the Buyer's sole discretion) shall purchase, acquire, and accept from the Seller, free and clear of all Claims, Liens, Encumbrances, and other interests, all of the Seller's right, title, and interest in and to: (i) the Loans to various dealerships listed on **Exhibit A** to this Agreement, subject to the terms and conditions described in **Exhibit A** (collectively, the "Purchased Loans"), including all rights to receivables thereunder and all collateral securing such Purchased Loans, and including amounts held in reserve or specialized dealership accounts in connection with such Purchased Loans; (ii) the Seller Intellectual Property; and (iii) the Officer Loan  (collectively, the "Purchased Assets").

1.2.    The Seller shall deliver a final list of the Purchased Assets to the Buyer at the close of business on the Business Day immediately preceding the Closing (the "Determination Date").

1.3.    Excluded Assets.  Notwithstanding anything to the contrary in this Agreement or any other writing, in no event shall the Seller be deemed to sell, transfer, assign, or convey, and the Seller shall retain all right, title, and interest to, in, and under any assets, properties, interests, and rights of the Seller other than the Purchased Assets (collectively, the "Excluded Assets").

1.4.    Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement and the Sale Order, effective as of the Closing, the Buyer (or a designee of the Buyer in the Buyer's sole discretion) shall assume from the Seller (and pay, perform, discharge, or otherwise satisfy in accordance with their respective terms), and the Seller shall irrevocably convey, transfer, and assign to the Buyer, the "Assumed Liabilities" and only the Assumed

*EXECUTION VERSION*

Liabilities and no other obligation or liability. "Assumed Liabilities" shall mean only the Obligations related to reserves or specialized dealership accounts held on deposit by the Seller with respect to the Purchased Loans.

1.5.   Excluded Liabilities.  Notwithstanding anything to the contrary in this Agreement or any other writing, except for the Assumed Liabilities, in no event shall the Buyer be deemed to assume any other Liabilities of the Seller of whatever nature (whether arising prior to, at the time of, or subsequent to the Closing), whether absolute, accrued, contingent, or otherwise, whether due or to become due and whether or not assets, and whether or not known or unknown or matured or unmatured, direct or indirect, and the Seller shall be solely and exclusively liable for any and all such Liabilities (collectively, the "Excluded Liabilities").

1.6.   Post-Closing Liabilities.  Except as provided otherwise in this Agreement, the Buyer acknowledges that the Buyer and its affiliate designee shall be responsible for all Liabilities and obligations relating to the Buyer's ownership or use of, or right to use, the Purchased Assets and the Assumed Liabilities after the Closing Date, including all taxes arising out of or relating to the Purchased Assets for all tax periods beginning after the Closing Date.

1.7.   Buyer's Continuing Liability for Designee.  Notwithstanding anything in this Agreement to the contrary, the Buyer may assign its rights under this Agreement to one or more wholly-owned designees, but in all such events, the Buyer shall remain liable to the Seller for all of the Buyer's obligations.

1.8.   [Reserved]

## ARTICLE II.

## CONSIDERATION

2.1.   Consideration.

(a)   Purchase Price.  The aggregate consideration to be paid for the sale and transfer of the Purchased Assets shall be: (i) cash in immediately available funds the amount of sixty percent (60%) of the Purchased Loans (the "Cash Consideration"); minus (ii) the assumption of the Assumed Liabilities (collectively, the "Purchase Price"); provided, however, that the Buyer reserves the right to modify the Purchase Price, subject to Section 2.1(b), the Bidding Procedures Order, and applicable Law.

(b)   Purchase Price Cap.  For the avoidance of doubt, notwithstanding anything in this Agreement to the contrary, in no event shall the Cash Consideration exceed (x) US$4,200,000 less (y) the Assumed Liabilities.

(c)   Limitation on Buyer Liability.  For the avoidance of doubt, the Buyer shall have no liability with respect to any costs, fees, or expenses of any nature incurred by the Seller following the Closing Date.

3

*EXECUTION VERSION*

2.2.   Deposit.  No later than five (5) Business Days following the entry of the Bidding Procedures Order, the Buyer shall make an earnest money deposit in the amount of US$150,000 (the "Deposit") to either (a) a segregated account maintained by the Seller or (b) counsel to the Debtor's attorney trust account.  If the Closing occurs, the Deposit shall be applied against payment of the Purchase Price on the Closing Date.  If this Agreement is terminated pursuant to Sections 3.4, 3.5, and 3.6 hereof, or in the event that any Person other than the Buyer otherwise purchases all or any portion of the Purchased Assets, then the Seller shall return the Deposit to the Buyer promptly, and in no event later than five (5) Business Days after the later of such termination and (if terminated pursuant to Section 3.4(e) or (f)) the Closing of any Alternative Transaction.

ARTICLE III.

CLOSING AND TERMINATION

3.1.   Closing.  Subject to the satisfaction or waiver of the conditions set forth in Article VIII, the closing of the purchase and sale of the Purchased Assets, the payment of the Purchase Price, the assumption of the Assumed Liabilities, and the consummation of the other transactions contemplated by this Agreement (the "Closing") shall occur as soon as practicable following the satisfaction or waiver of all conditions set forth in this Agreement (other than those conditions that by their terms are to be satisfied at the Closing).  The Closing shall take place by telephone and/or videoconference and electronic exchange of documents (or, if the Parties agree to hold a physical closing, at the offices of DLA Piper LLP (US), 33 Arch Street, 26th Floor, Boston, Massachusetts 02110-1447, or at such other place as the Parties may agree).  Unless otherwise agreed by the Parties in writing, the Closing shall be deemed effective and all right, title, and interest of the Seller in the Purchased Assets to be acquired by the Buyer hereunder shall be deemed to have passed to the Buyer and the assumption of all of the Assumed Liabilities shall be deemed to have occurred as of 12:01 a.m. prevailing Eastern Time on the Closing Date.

3.2.   Closing Deliverables by Seller.  At or prior to the Closing, the Seller shall deliver to the Buyer:

(a)   a bill of sale and assumption and assignment agreement in the form of **Exhibit B** or such other form as is agreed to by the Buyer (the "Bill of Sale and Assumption and Assignment Agreement"), duly executed by the Seller;

(b)   a copy of the Sale Order;

(c)   [Reserved];

(d)   [Reserved];

(e)   an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of the Seller, certifying that the conditions set forth in this Section 3.2 have been satisfied;

(f)   [Reserved];

4

***EXECUTION VERSION***

(g)     actual or deemed possession of the Purchased Assets, including, but not limited to, any and all Vehicle Titles held by, or held by a third party for the benefit of, the Seller, to the extent applicable;

(h)     such other bills of sale, endorsements, assignments, and other good and sufficient instruments of conveyance and transfer, in form satisfactory to the Buyer, as the Buyer may reasonably request to vest in the Buyer all of the Seller's right, title, and interest of the Seller in, to, or under any or all of the Purchased Assets; and

(i)     such other documents as the Buyer may reasonably request that are not inconsistent with the terms of this Agreement and customary for a transaction of this nature and necessary to evidence or consummate the transactions contemplated by this Agreement.

3.3.   <u>Closing Deliverables by Buyer</u>.   At the Closing, the Buyer shall deliver to the Seller:

(a)     the Bill of Sale and Assumption and Assignment Agreement, duly executed by the Buyer;

(b)     the Cash Consideration;

(c)     an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of the Buyer certifying that the conditions set forth in this <u>Section 3.3</u> have been satisfied; and

(d)     all other certificates, agreements, and other documents required by this Agreement.

3.4.   <u>Termination of Agreement</u>.   This Agreement may be terminated only in accordance with this <u>Section 3.4</u>.   This Agreement may be terminated at any time prior to the Closing, as follows:

(a)     by the mutual written consent of the Seller and the Buyer;

(b)     by written notice of the Buyer to the Seller, if the Buyer has failed to file with the Bankruptcy Court a motion, in form and substance satisfactory to the Buyer, seeking approval of the Bidding Procedures Order prior to February 4, 2022.

(c)     by written notice of either the Seller or the Buyer to such other Party, if the Closing shall not have been consummated prior to March 18, 2022 (the "<u>Outside Date</u>"); <u>provided</u>, <u>however</u>, that the Outside Date may be extended by the mutual written consent of the Seller and the Buyer, for a period of up to thirty (30) days to the extent that all conditions to Closing set forth in this Agreement are capable of being satisfied as of such time; <u>provided</u>, <u>however</u>, that a Party shall not be permitted to terminate this Agreement pursuant to this <u>Section 3.4</u> if the failure of the Closing to occur prior to the Outside Date is a result of the failure of the Party seeking to terminate

5

*EXECUTION VERSION*

this Agreement to materially perform any of its obligations or covenants under this Agreement required to be performed by it at or prior to the Closing;

(d)     by written notice from the Buyer to the Seller if (i) the Seller seeks to have the Bankruptcy Court enter an Order (a) dismissing the Debtor's chapter 11 case, (b) converting the Debtor's chapter 11 case into a case under chapter 7 of the Bankruptcy Code, (c) appointing a chapter 11 trustee, responsible officer, or examiner with enlarged power over the Debtor's estate and/or business; or (ii) an order of dismissal, conversion, or appointment is entered for any reason and is not reversed or vacated within fourteen (14) days after entry thereof;

(e)     by written notice of either the Seller or the Buyer, if the Seller has entered into any agreement or understanding with respect to or initiated proceedings regarding (i) the approval by the Bankruptcy Court of a sale or a sale of a portion of the Purchased Assets to a Person other than the Buyer, or (ii) the filing of a plan of reorganization that does not contemplate the sale of the Purchased Assets to the Buyer in accordance with the terms hereof (an "Alternative Transaction"), or if proceedings related to an Alternative Transaction have otherwise been initiated, *provided*, *however*, the Seller may conduct discussions with a Person other than the Buyer regarding an Alternative Transaction as the Seller deems necessary in its sole discretion to fulfill its fiduciary duties as a debtor-in-possession in its Bankruptcy Case, subject to such Person's execution of a non-solicitation agreement, in form and substance satisfactory to the Seller and the Buyer, among other things, prohibiting such Person from soliciting the Seller's Customers for a period of 12-months from the date hereof if such Person does not submit a Qualified Bid, as a condition precedent to such Person receiving confidential information or access to the Seller's data room;

(f)     automatically upon the closing of an Alternative Transaction;

(g)     by written notice from the Seller to the Buyer, if, prior to the Closing, the Buyer shall have materially breached, or failed to materially perform in any respect, any representations, warranties, or covenants of the Buyer contained in this Agreement and such breach or failure to perform: (i) would give rise to the failure of a condition to the Closing, (ii) cannot be or has not been cured within fourteen (14) days following delivery of notice to the Buyer of such breach or failure to perform, and (iii) has not been waived by the Seller.

Each condition set forth in this Section 3.4, pursuant to which this Agreement may be terminated, shall be separate and district from each other such condition.  If more than one of the termination conditions set forth in this Section 3.4 is applicable, the applicable Party shall have the right to choose the termination condition pursuant to which this Agreement is to be terminated.

3.5.     Procedures Upon Termination.  In the event of termination and abandonment by the Seller and the Buyer, or both such Parties, pursuant to Section 3.4 of this Agreement, written notice thereof shall forthwith be given to the other Party, and this Agreement shall terminate, and the purchase of the Purchased Assets and the assumption of the Assumed Liabilities hereunder shall be abandoned, without further action by the Buyer or the Seller.  If this Agreement is terminated pursuant to any Section 3.4(e) or (f), in addition to the return of the Deposit pursuant to procedures in Section 2.2, solely from, conditioned upon, and to the extent the Debtor receives

6

*EXECUTION VERSION*

the proceeds of an Alternative Transaction, the Seller shall pay to the Buyer, solely from such proceeds actually received by the Seller, the Expense Reimbursement, consisting of the Buyer's reasonable attorneys' fees not to exceed $50,000 (the "Expense Reimbursement") and the Break-Up Fee, equal to $150,000 (the "Break-Up Fee" and, together with the Expense Reimbursement, the "Bid Protections"), both in cash or immediately available funds.  The Bid Protections shall be entitled to superpriority administrative expense status and shall be paid to the Buyer, if triggered, from the proceeds of an Alternative Transaction prior to distribution of such proceeds to any other party.  The Parties shall have no further obligations to one another except for any obligations that, by their terms, survive the termination of this Agreement, as described in Section 3.6 hereof.

3.6.    Effect of Termination.  In the event of termination of this Agreement pursuant to Section 3.4, this Agreement shall forthwith become null and void and there shall be no liability on the part of any Party or any of its partners, officers, directors, shareholder, or members; provided, however, that (a) this Section 3.6, the Seller's obligation, if any, to pay the Bid Protections pursuant to Section 3.5, and the Bidding Procedures Order (if entered) shall survive any such termination. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by Law.  Each Party acknowledges that the agreements contained in this Section 3.6 and in Section 3.5 are an integral and material part of the transactions contemplated by this Agreement, that without these agreements, such Party would not have entered into this Agreement, and that any amounts payable pursuant to this Section 3.6 and Section 3.5 do not constitute a penalty. Notwithstanding the foregoing, each Party reserves all rights and claims arising from a breach of this Agreement by the other Party.

ARTICLE IV.

REPRESENTATIONS AND WARRANTIES OF THE SELLER

Subject to the exceptions noted in the Disclosure Schedules delivered by the Seller contemporaneously herewith or at the Closing, the Seller represents and warrants to the Buyer as follows as of the date of this Agreement and as of the Closing Date:

4.1.    Organization and Qualification.  The Seller is a legal entity duly organized, validly existing, and in good standing under the Laws of the jurisdiction of its formation.  The Seller has all requisite power and authority to own, lease, and operate its properties and to carry on its business as it is now being conducted, subject to the provisions of the Bankruptcy Code and entry by the Bankruptcy Court of the Sale Order.  The Seller is not in violation of any of the provisions of its Organizational Documents.  To the Seller's Knowledge, the Seller is duly qualified or licensed to do business and is in good standing in each jurisdiction where it does business.

4.2.    Authorization of Agreement.  Subject to and to the extent set forth in the Sale Order, the Seller has all requisite power and authority to execute and deliver this Agreement and each of the Ancillary Documents to which it is a party, to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby.

4.3.    Conflicts; Consents; Compliance with Law.

7

(a)    To the extent set forth in the Sale Order, the execution, delivery, and performance by the Seller of this Agreement or any Ancillary Document to which it is a party, the compliance by the Seller with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby and thereby and the taking by the Seller of any other action contemplated hereby or thereby, do not and will not: (i) contravene, violate, or conflict with any term or provision of its respective Organizational Documents; (ii) conflict with or result in any breach or violation of or constitute a default or change of control under, or give rise to a right of, or result in, termination, modification, cancellation, first offer, first refusal, or acceleration of any obligation or to the loss of a benefit under any Contract; (iii) result in the creation or imposition of any Encumbrance on any Purchased Asset; (iv) conflict with or violate any Order or Law applicable to the Seller or their respective properties, rights, or assets, except in the case of the foregoing clauses (ii), (iii), and (iv), for breaches, violations, defaults, rights, creations, or impositions that are excused by or unenforceable as a result of the entry or effectiveness of the Sale Order.

(b)    To the extent set forth in the Sale Order, the Seller is in compliance, in all material respects, with all applicable Orders and Laws.  The Seller has not received any outstanding written notice from any Governmental Body regarding any actual or possible violation of, or failure to compliance in any respect with, any Order or Law.  No Seller is in default in any material respect with any order, writ, injunction, judgment, or decree applicable to the Seller's business or the Purchased Assets.

(c)    Except as set forth on Schedule 4.3(c), to the extent set forth in the Sale Order, the Seller is in compliance, in all material respects, with all reporting requirements, government approvals, clearances, and consents under non-bankruptcy law, including, but not limited to, with respect to the Purchased Loans.

4.4.    Brokers and Finders.  No Person has acted, directly or indirectly, as a broker or finder for the Seller in connection with the transactions contemplated by this Agreement.  The Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker or finder as a result of the consummation of the transactions contemplated by this Agreement based upon any arrangement made by or on behalf of the Seller.

4.5.    Title to Purchased Assets.  The Seller has good title to and all rights to use all of the Purchased Assets and, at the Closing, the Buyer, pursuant to and to the extent set forth in the Sale Order, shall acquire good and marketable title in and under all of such Purchased Assets, in each case free and clear of all Claims, Liens, Encumbrances, and other interests to the fullest extent permissible under sections 363(f) and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

4.6.    Seller Intellectual Property.  The Seller owns all right, title, and interest to, or possess valid and binding licenses to use, the Seller Intellectual Property and the Seller can convey the Seller Intellectual Property free and clear of Encumbrances pursuant to the Sale Order.  No third party has brought any claim in any suit or action related to the Seller Intellectual Property.  Seller has no Knowledge that any Person is engaging in any activity that infringes on any Seller Intellectual Property.  No claim has been asserted against the Seller that the use of any Seller

8

Intellectual Property infringes or violates the intellectual property of any third party.  The Seller Intellectual Property and the rights under the Contracts include the Seller's rights to use all Seller Intellectual Property in the ordinary course of business, as currently conducted or as currently proposed to be conducted.

4.7.    Litigation.  Except as set forth on Schedule 4.7, other than the Debtor's chapter 11 case, to the Seller's Knowledge, there is no suit, action, litigation, arbitration proceeding, or governmental proceeding or audit, including appeals or applications for review, in progress, pending or, to the best of the Seller's Knowledge, threatened, nor is there any judgment, decree, injunction, deficiency, rule, or order of any court, governmental department, commission, agency, instrumentality, or arbitrator which, in any case, (i) relates to the Purchased Assets or the Assumed Liabilities, or (ii) challenges, or would be reasonably be expected to have the effect of preventing, delaying, making illegal, or otherwise interfering with the transactions contemplated by this Agreement.  The Seller has no Knowledge of any existing ground on which any such action, suit, litigation, audit, or proceeding may be commenced with any reasonable likelihood of success.

4.8.    Intellectual Property Contracts.

(a)    Schedule 4.8 contains a complete and correct list, as of the date of this Agreement, of each Contract that is material to the Seller Intellectual Property or operation of the thereof under which the Seller has any current or future rights, responsibilities, obligations, or Liabilities (in each case, whether contingent or otherwise).

4.9.    Absence of Certain Changes.

(a)    Since January 1, 2022, there has not been a Material Adverse Effect.

(b)    Except as expressly required pursuant to this Agreement, the Seller has not:

(i)    except for executory contracts and unexpired leases rejected by the Seller pursuant to a Bankruptcy Court Order with the prior written consent of the Buyer, terminated, modified, or amended any Contract or taken any action which violates, conflicts with, or resulted in a breach of any provision of, or constitutes a default under, or gives rise to the right of any counterparty to accelerate the obligations under or modify the terms of, any Contract to the extent enforceable pursuant to applicable law, including section 365 of the Bankruptcy Code;

(ii)    sold, leased, transferred, or otherwise disposed of any Purchased Assets, or permitted, allowed, or suffered any of the Purchased Assets to be subjected to any Encumbrance, other than in the ordinary course of business;

(iii)    waived or released any claim or rights included in or related to the Purchased Assets;

(iv)    entered into any material contractual relationship with any third party related to the Purchased Assets; or

9

Case 21-10315    Doc 343-2    Filed 02/08/22    Entered 02/08/22 15:10:44    Desc Exhibit
B Executed First Amended Asset Purchase Agreement With Exhibits    Page 12 of 58
*EXECUTION VERSION*

(v)        agreed or committed to do any of the foregoing.

4.10.    <u>Modification of Trade Name</u>.  In connection with the transfer and conveyance of the Seller Intellectual Property to the Buyer, at the direction of the Buyer, upon entry of the Sale Order, the Seller shall change its legal and/or trade name to Old Shamrock Finance LLC, or another name as reasonably agreed to by the Parties.

<div align="center">ARTICLE V.</div>

<div align="center">REPRESENTATIONS AND WARRANTIES OF THE BUYER</div>

Subject to the exceptions noted in the schedules delivered by the Buyer contemporaneously herewith, the Buyer represents and warrants to the Seller as follows as of the date of this Agreement and as of the Closing Date:

5.1.    <u>Organization and Qualification</u>.  The Buyer is duly organized, validly existing, and in good standing under the Laws of its jurisdiction of incorporation.  The Buyer has all requisite power and authority to own, lease, and operate its properties and to carry on its business as it is now being conducted.

5.2.    <u>Authority</u>.  The Buyer has the requisite power and authority to execute and deliver this Agreement and each of the Ancillary Documents to which it is a party, to perform its obligations hereunder and thereunder, to consummate the transactions contemplated hereby and thereby and to assume and perform the Assumed Liabilities.  The execution and delivery of this Agreement by the Buyer and each of the Ancillary Documents to which it is a party, the performance by the Buyer of its obligations hereunder and thereunder, the consummation of the transactions contemplated hereby and thereby, and the assumption and performance of the Assumed Liabilities have been duly and validly authorized by all necessary actions on the part of the Buyer.

5.3.    <u>No Inconsistent Obligations</u>.  Neither the execution and delivery of this Agreement or any other documents contemplated hereby, nor the consummation of the transactions contemplated herein or therein in accordance with the Sale Order, will, to the Buyer's Knowledge, result in a violation or breach of, or constitute a default under, (a) the Organizational Documents of the Buyer, (b) any applicable, material ruling or order of any Governmental Body, (c) any material term or provision of any contract or agreement to which the Buyer is a party, (d) any material writ, order, judgment, decree, law, rule, regulation, or ordinance, applicable to the Buyer, or (e) any other commitment or restriction to which the Buyer is a party, except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on the Buyer's ability to consummate the transactions contemplated hereby.

5.4.    <u>No Litigation</u>.  To the Buyer's Knowledge, there are no actions, suits, claims, investigations, hearings, or proceedings of any type (except for proceedings or objections pending before the Bankruptcy Court which may be filed in connection with the Debtor's chapter 11 case) instituted against the Buyer challenging the legality of the transactions contemplated in this Agreement, except as would not reasonably be expected to have, individually or in the

<div align="center">10</div>

EAST\187023880.4

aggregate, a Material Adverse Effect on the Buyer's ability to consummate the transactions contemplated hereby.

<div align="center">ARTICLE VI.</div>

<div align="center">BANKRUPTCY COURT MATTERS</div>

6.1.    <u>Approval of Bid Protections</u>.  Subject to the entry of the Bidding Procedures Order, in consideration for the Buyer having expended considerable time and expense in connection with this Agreement and the negotiation hereof, the identification and qualification of assets of the Seller, and the Buyer's foregoing of other opportunities, the Seller shall pay the Bid Protections to the Buyer promptly in accordance with, and only to the extent provided in, the provisions of <u>Section 3.5</u>, and the Bidding Procedures Order.  The obligations of the Seller to pay the Bid Protections, if any, (i) shall be entitled to super-priority administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, (ii) shall not be subordinated to any other administrative expense claim against the Seller, and (iii) shall survive the termination of this Agreement in accordance with <u>Section 3.6</u>.

6.2.    <u>Competing Bid and Other Matters</u>.

(a)    As soon as reasonably practicable, but in no event later than February 4, 2022, the Seller shall file with the Bankruptcy Court a motion seeking approval of (i) the Bidding Procedures Order, (ii) the form of this Agreement (a true and complete copy of which shall be attached to such motion without schedules), and (iii) the Seller's authority to enter into this Agreement (the "<u>Bidding Procedures Motion</u>"); <u>provided</u>, <u>however</u>, that such motion and all exhibits thereto shall be in form and substance reasonably acceptable to the Buyer.

(b)    This Agreement and the transactions contemplated hereby are subject to the Seller's right and ability to consider higher or otherwise better competing bids with respect to the Purchased Assets (or a material portion thereof) pursuant to the Bidding Procedures Order (each, a "<u>Competing Bid</u>").

(c)    Upon the conclusion of an Auction, if one is conducted, the Seller shall select the highest or otherwise best Competing Bid for the Purchased Assets (such prevailing party, the "<u>Successful Bidder</u>").

(d)    The Buyer shall cause its counsel to enter an appearance in the Bankruptcy Case and thereafter obtain and receive electronic service of and notification of all documents filed in the Bankruptcy Case pursuant to the Court's ECF system.

6.3.    <u>Sale Order</u>.  The Sale Order shall be entered by the Bankruptcy Court on or before the Outside Date.  The Sale Order shall, among other things, (i) approve, pursuant to sections 105 and 363 of the Bankruptcy Code, (A) the execution, delivery, and performance by the Seller of this Agreement, (B) the sale of the Purchased Assets to the Buyer on the terms set forth herein, free and clear of all Claims, Liens, Encumbrances, and other interests (other than the Encumbrances included in the Assumed Liabilities), and (C) authorize the performance by the

<div align="center">11</div>

*EXECUTION VERSION*

Seller of its obligations under this Agreement; and (ii) find that the Buyer is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor to the Seller, and grant the Buyer the protections of section 363(m) of the Bankruptcy Code.  The Parties shall promptly take such actions as are reasonably requested, necessary, or desirable to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of demonstrating the Buyer is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.

6.4.    <u>Bankruptcy Filings</u>.  From and after the date of this Agreement and until the Closing Date, to the extent relevant and material to the transactions that are the subject of this Agreement, the Seller shall deliver to the Buyer drafts of any and all pleadings, motions, notices, and all material statements, schedules, applications, reports, and other papers to be filed or submitted in connection with this Agreement for the Buyer's prior review and comment, to the extent time and other exigencies permit.

6.5.    <u>Sale Free and Clear</u>.  The Sale Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising obligations, Liabilities, Claims, and Encumbrances of, against, or created by the Seller or its bankruptcy estate, to the fullest extent permitted by section 363 of the Bankruptcy Code, shall be fully released from and with respect to the Purchased Assets.  On the Closing Date, the Seller shall transfer the Purchased Assets to the Buyer free and clear of all Claims, Liens, Encumbrances, and other interests (except for the Assumed Liabilities) to the fullest extent permitted by section 363 of the Bankruptcy Code and the Sale Order.

## ARTICLE VII.

## COVENANTS AND AGREEMENTS

7.1.    <u>Conduct of the Seller</u>.  During the pre-Closing period, the Seller shall use commercially reasonable efforts, except as otherwise required, authorized, or restricted pursuant to the Bankruptcy Code or an Order of the Bankruptcy Court, to (A) maintain the Purchased Assets and (B) continue to operate the Purchased Assets in all material respects in compliance with all Orders and Laws applicable to the Seller and its business in the ordinary course of business. Without limiting the generality of the foregoing, and except, (i) as otherwise expressly provided in or contemplated by this Agreement, (ii) required, authorized, or restricted pursuant to the Bankruptcy Code or an Order of the Bankruptcy Court, on or prior to the Closing Date, the Seller shall not suffer or incur any Material Adverse Effect in the Purchased Assets or its operations.

7.2.    <u>Access to Information</u>.  The Seller agrees that, between the date of this Agreement and the earlier of the Closing Date and the date on which this Agreement is terminated in accordance with <u>Section 3.4</u>, the Buyer shall be entitled, through its officers, employees, legal counsel, accountants, and other authorized representatives, agents, and contractors (the "<u>Buyer Representatives</u>"), to have such access to and make such investigation and examination of the books and records, properties, businesses, assets, employees, accountants, auditors, counsel, and operations of the Seller (the "<u>Seller Representatives</u>") as the Buyer's Representatives may reasonably request.  Any such investigations shall be conducted during normal business hours

<center>12</center>

upon reasonable advance notice.  The Seller shall use commercially reasonable efforts to cause the Seller Representatives to cooperate with the Buyer and the Buyer Representatives in connection with such investigations and examinations, and the Buyer shall use its commercially reasonable efforts to cause the Buyer Representatives to, cooperate reasonably with the Seller and the Seller Representatives.

7.3.    [Reserved]

7.4.    <u>Rejected Contracts</u>.  The Seller shall not reject any Contract in any Bankruptcy Court proceeding pertaining to the Purchased Assets, if any, following the date of this Agreement without the prior written consent of the Buyer.

7.5.    <u>Employment of Kevin Devaney</u>.  At least two days prior to the date set for the Auction, the Buyer shall enter into a binding employment with Kevin Devaney (the "<u>Devaney Employment Agreement</u>"), subject only to the occurrence of the Closing, to, among other things, manage and administer the Purchased Assets.  The material economic terms of the Devaney Employment Agreement are set forth on **<u>Exhibit E</u>** to this Agreement.

7.6.    <u>Transfer of Vehicle Titles</u>.  In accordance with <u>Section 3.2</u>(h), on the Closing Date, the Seller shall provide physical possession to the Buyer all Vehicle Titles held by, or in the possession, custody, or control of a third party for the benefit of, the Seller.  For the avoidance of doubt, post-Closing, if the Seller, or any third party for the benefit of the Seller, receives any Vehicle Titles corresponding to any vehicles covered by any of the Purchased Loans, the Seller shall promptly transfer, or cause the transfer of, such Vehicle Titles to the Seller.

7.7.    <u>Further Assurances</u>.  Each Party shall execute and cause to be delivered to each other Party such instruments and other documents, and shall take such other actions, as such other Party may reasonably request (prior to, at, or after the Closing) for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.  If, following the Closing, the Seller receives or becomes aware that it holds any assets, property, or right which constitutes a Purchased Asset, then the Seller shall transfer such asset, property, or right to the Buyer and/or, as applicable, one or more designees of the Buyer as promptly as practicable for no additional consideration.  If, following the Closing, the Buyer receives or becomes aware that it holds any asset, property, or right which constitutes an Excluded Asset, then the Buyer shall transfer such asset, property, or right to the Seller as promptly as practicable for no additional consideration.

7.8.    <u>Notification of Certain Matters</u>.  The Seller shall give prompt notice to the Buyer, and the Buyer shall give prompt notice to the Seller, of (i) any notice or other communication from any Person alleging that the consent of such Person which is or may be required in connection with the transactions contemplated by this Agreement or the Ancillary Documents is not likely to be obtained prior to the Closing, (ii) any written objection or proceeding that challenges the transactions contemplated hereby or the entry of the Bidding Procedures Order or the Sale Order, and (iii) the status of matters relating to the completion of the transactions contemplated hereby, including furnishing promptly the other Party with copies of notices or other communications received by the Seller or the Buyer or by any of the Seller Representatives or the Buyer Representatives, from any third party or any Governmental Body with respect to the transactions

13

contemplated by this Agreement.  The Seller shall have no liability with respect to the Purchased Assets from and after the Closing.

7.9.    <u>Material Adverse Effect</u>.  The Seller shall promptly inform the Buyer in writing of the occurrence of any event that has had, or is reasonably expected to have, a Material Adverse Effect.  For purposes of this Agreement, "<u>Material Adverse Event</u>" means any event, change, occurrence, or state of facts that has had, or is reasonably likely to have, individually or in the aggregate, a material adverse effect on the Purchased Assets or Assumed Liabilities, taken as a whole.

7.10.    <u>No Successor Liability</u>.  The Parties agree that, upon the Closing, the Buyer shall not be deemed to: (i) be the successor of the Seller, (ii) have, *de facto*, or otherwise, merged with or into the Seller, (iii) be a mere continuation or substantial continuation of the Seller or the enterprise of the Seller, or (iv) be liable for any ats or omissions of the Seller in the conduct of the Seller's business or arising under or related to the Purchased Assets other than as set forth in this Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, the Parties agree that the Buyer shall not be liable for any Encumbrance (other than the Assumed Liabilities) against the Seller or any of the Seller's predecessors or affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Seller's business, the Purchased Assets, or any Liabilities of the Seller arising prior to the Closing Date.

7.11.    <u>Post-Closing Seller Intellectual Property</u>.  From and after the Closing, from time-to-time and during normal business hours, the Buyer shall make available to the Seller the Seller Intellectual Property, as reasonably requested by the Seller.  The Seller shall not be permitted to use, sell, disclose, or otherwise dispose of the Seller Intellectual Property transferred as part of this Agreement that in any way, directly or indirectly, diminishes the value of the Seller Intellectual Property.  For the avoidance of doubt from and after the Closing, except in connection with the administration of the Bankruptcy Case, including but not limited to, collections, plan confirmation, and adversary proceedings commenced or to be commenced, and as necessary for the Seller to fulfill its obligations as required by Fed. R. Civ. P. 37(e) and similar state requirements, the Seller shall have no further right, entitlement, license, or authorization to use, sell, disclose, or otherwise dispose of the Seller Intellectual Property without the express written consent of the Buyer.

ARTICLE VIII.

CONDITIONS TO CLOSING

8.1.    <u>Conditions Precedent to the Obligations of Buyer and Seller</u>.  The respective obligations of each Party to this Agreement to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or to the extent permitted by Law, written waiver by each of the Seller and the Buyer) on or prior to the Closing Date, of each of the following conditions:

(a)    there shall not be in effect, enacted, enforced, or entered by a Governmental Body any Law, Order, writ, injunction, judgment, decision, or decree preventing, enjoining,

14

restraining, making illegal, or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Documents; provided, however, that (i) the right to terminate this agreement pursuant to this Section 8.1 shall not be available to any Party whose breach of any of its representations, warranties, covenants, or agreements contained herein results in such Order, writ, injunction, judgment, decision, or decree, and (ii) the Party seeking to terminate this Agreement shall have used commercially reasonable efforts to have such Law declared invalid or inapplicable or such Order, writ, injunction, judgment, decision, or decree vacated; and

(b)    the Bankruptcy Court shall have entered the Bidding Procedures Order and the Sale Order (as provided in Article VI) and each of such orders shall be in form and substance reasonably satisfactory to the Seller and the Buyer, which orders shall not have been reversed, modified, amended, or stayed.

8.2.    Conditions Precedent to the Obligations of the Seller.  The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions, any of which may be waived in writing by Sellers in their sole discretion:

(a)    the representations and warranties made by the Buyer in this Agreement or in any Ancillary Document shall be true and correct in all material respects;

(b)    the Buyer shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by the Buyer on or prior to the Closing Date;

(c)    the Buyer shall have entered into the Devaney Employment Agreement and has disclosed the terms of which to the Seller; and

(d)    the Buyer shall have delivered, or caused to be delivered, to the Seller all of the items set forth in Section 3.2.

8.3.    Conditions Precedent to the Obligations of the Buyer.  The obligations of the Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions, any of which may be waived in writing by the Buyer in its sole discretion:

(a)    the representations and warranties made by the Seller in this Agreement and in any Ancillary Document that are not qualified by "Material Adverse Effect" or other materiality qualifiers shall be true and correct in all material respects;

(b)    the Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by the Seller on or prior to the Closing Date;

*EXECUTION VERSION*

        (c)      the Seller shall have delivered, or caused to be delivered, to the Buyer, all of the items set forth in Section 3.2; and

        (d)      the Seller shall have complied with the sale process deadlines set forth in the Bidding Procedures Order.

<div align="center">ARTICLE IX.</div>

<div align="center">ADDITIONAL DEFINITIONS</div>

9.1.   <u>Definitions</u>.  As used herein:

"<u>Action</u>" means any action, claim, complaint, grievance, summons, suit, litigation, arbitration, mediation, proceeding (including any civil, criminal, administrative, investigative, or appellate proceeding), prosecution, contest, hearing, inquiry, inquest, audit, examination, or investigation by or before any Governmental Body.

"<u>Agreement</u>" shall have the meaning set forth in the Preamble.

"<u>Alternative Transaction</u>" shall have the meaning set forth in Section 3.4(e).

"<u>Ancillary Documents</u>" means any certificate, agreement, document, or other instrument (other than this Agreement) to be executed and delivered by a Party in connection with the consummation of the transactions contemplated by this Agreement.

"<u>Assumed Liabilities</u>" shall have the meaning set forth in Section 1.4.

"<u>Auction</u>" shall have the meaning ascribed to such term by the Bidding Procedures Order.

"<u>Bankruptcy Code</u>" shall have the meaning set forth in the Recitals.

"<u>Bankruptcy Court</u>" shall have the meaning set forth in the Recitals.

"<u>Bankruptcy Rules</u>" shall have the meaning set forth in the Recitals.

"<u>Bid Protections</u>" shall have the meaning set forth in Section 3.5.

"<u>Bidding Procedures Motion</u>" shall have the meaning set forth in Section 6.2(a).

"<u>Bidding Procedures Order</u>" means an order, substantially in the form attached to this Agreement as **<u>Exhibit C</u>**, and otherwise in form and substance reasonably satisfactory to the Seller and the Buyer.

"<u>Bill of Sale and Assumption and Assignment Agreement</u>" shall have the meaning set forth in Section 3.2(a).

"<u>Break-Up Fee</u>" shall have the meaning set forth in Section 3.5.

<div align="center">16</div>

***EXECUTION VERSION***

"Business Day" means any day other than a Saturday, Sunday, or other day on which banks in New York City, New York are authorized or required by Law to be closed.

"Buyer" shall have the meaning set forth in the Preamble.

"Buyer Representative" shall have the meaning set forth in Section 7.2.

"Claim" has the meaning given to that term in section 101(5) of the Bankruptcy Code and includes, among other things, all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment right, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"Closing" shall have the meaning set forth in Section 3.1.

"Closing Date" means the date on which the Closing occurs.

"Competing Bid" shall have the meaning set forth in Section 6.2(b).

"Contract" means any written or oral contract, purchase order, service order, sales order, indenture, bond, lease, sublease, license, understanding, instrument, or other agreement, arrangement, or commitment that is binding upon a Person or its property, whether express or implied. Notwithstanding the immediately preceding sentence, any and all promissory notes on which the Seller is obligated, including to all Persons and entities identified on the Debtor's schedules as creditors, are not included in the definition of "Contract".

"Debtor" shall have the meaning set forth in the Preamble.

"Deposit" shall have the meaning set forth in Section 2.2.

"Determination Date" shall have the meaning set forth in Section 1.2.

"Devaney Employment Agreement" shall have the meaning set forth in Section 7.5.

"Encumbrance" means any Lien (as defined in section 101(37) of the Bankruptcy Code), encumbrance, Claims (as defined in section 101(5) of the Bankruptcy Code), right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interests, title, defects, hypothecations, easements, rights of way, restrictive covenants, encroachments, rights of first refusal, preemptive rights, judgments, conditional sale or other title retention agreements and other impositions, imperfections, or defects of title or restrictions on transfer or use of any nature whatsoever.

"Excluded Assets" shall have the meaning set forth in Section 1.3.

"Excluded Liabilities" shall have the meaning set forth in Section 1.5.

17

*EXECUTION VERSION*

"Expense Reimbursement" shall have the meaning set forth in Section 3.5.

"Final Order" means any Order or judgment of the Bankruptcy Court or any other court of competent jurisdiction, which has not been modified, amended, reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

"Governmental Body" means any government, quasi-governmental entity, or other governmental or regulatory body, agency, or political subdivision thereof of any nature, whether national, international, multi-national, supra-national, federal, state, or local, or any agency, branch, department, official, entity, instrumentality, or authority thereof, or any court or arbitrator (public or private) of applicable jurisdiction.

"Knowledge" means the actual knowledge of a natural person, or, with respect to a Person that is not a natural person, the actual knowledge of the officers or management of any person, in each case, after due inquiry and including facts of which any such individual should be aware in the reasonably prudent exercise of his or her duties.

"Law" means any federal, state, local, municipal, multinational, or other law, treaty, statute, constitution, principle of common law, resolution, ordinance, code, edict, decree, rule, regulation, ruling, or requirement issued, enacted, adopted, promulgated, implemented, or otherwise put into effect by or under the authority of any Governmental Body, in each case as in effect as of the Closing Date.

"Liability" means, as to any Person, any debt, adverse claim, liability (including any liability that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, direct or indirect, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed.

"Lien" has the meaning given to that term in section 101(37) of the Bankruptcy Code.

"Material Adverse Effect" shall have the meaning set forth in Section 7.9.

18

*EXECUTION VERSION*

"Officer Loan" means that certain loan to Kevin Devaney, Chief Executive Officer, of the Seller, having a principal balance of US$25,000.

"Order" means any award, writ, injunction, judgment, order, ruling, decision, subpoena, mandate, precept, command, directive, consent, approval, award, decree or similar determination, or finding entered, issued, made, or rendered by any Governmental Body.

"Organizational Documents" means, with respect to a particular entity Person, (i) if a corporation, the articles or certificate of incorporation and bylaws, (ii) if a general partnership, the partnership agreement and any statement of partnership, (iii) if a limited partnership, the limited partnership agreement and certificate of limited partnership, (iv) if a limited liability company, the articles or certificate of organization or formation and any limited liability company or operating agreement, (v) if another type of Person, all other charter and similar documents adopted or filed in connection with the creation, formation or organization of the Person, and (vi) all amendments or supplements to any of the foregoing.

"Outside Date" shall have the meaning set forth in Section 3.4(c).

"Party" shall have the meaning set forth in the Preamble.

"Person" means an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body, or other entity or group.

"Petition Date" shall have the meaning set forth in the Recitals.

"Purchase Price" shall have the meaning set forth in Section 2.1.

"Purchased Assets" shall have the meaning set forth in Section 1.1.

"Purchased Loans" shall have the meaning set forth in Section 1.1.

"Sale Order" means an order authorizing the purchase and sale transaction that is the subject of this Agreement in form and substance reasonably satisfactory to Buyer and Seller.

"Seller" shall have the meaning set forth in the Preamble.

"Seller Intellectual Property" means the following intellectual property owned or purported to be owned by the Seller: (i) all domain names; (ii) all trade names; (iii) all proprietary software, platforms, dashboards, or processing systems; (iv) all customer lists and data associated therewith; (v) all trade secrets; and (vi) any other intellectual property arising out of or related to (i)–(v).

19

*EXECUTION VERSION*

"Seller Representative" shall have the meaning set forth in Section 7.2.

"Vehicle Title" means titling documents for an automobile evidencing ownership, as required by the applicable federal and state law.

ARTICLE X

MISCELLANEOUS

10.1.   Payment of Expenses.  Except as otherwise provided in this Agreement (including, but not limited to, Section 3.5) and whether or not the transactions contemplated hereby are consummated, the Seller and the Buyer shall bear their own expenses incurred or to be incurred in connection with the negotiation and execution of this Agreement and the Ancillary Documents and the consummation of the transactions contemplated hereby and thereby.

10.2.   Survival of Representations and Warranties; Survival of Confidentiality.  The Parties agree that the representations and warranties contained in this Agreement shall expire upon the Closing Date.  The Parties agree that the covenants contained in this Agreement to be performed at or after the Closing shall survive in accordance with the terms of the particular covenant or until fully performed.

10.3.   Entire Agreement; Amendments and Waivers.  This Agreement, together with the Ancillary Documents, represents the entire understanding and agreement between the Parties with respect to the subject matter hereof.  This Agreement may be amended, supplemented, or changed, and any provision hereof may be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification, or waiver is sought; provided, that, notwithstanding the foregoing, the schedules hereto may be amended upon the written consent of the Parties.  No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party shall be deemed to constitute a waiver by the Party taking such action of compliance with any representation, warranty, condition, covenant, or agreement contained herein.  The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by applicable Law.

10.4.   Execution of Agreement; Counterparts; Electronic Signatures.

(a)   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument, and shall become effective when counterparts have been signed by each of the Parties and delivered to the other Party; it being understood that each Party need not sign the same counterpart.

20

*EXECUTION VERSION*

      (b)    The exchange of copies of this Agreement and of signature pages by facsimile or electronic mail in "portable document format" (.pdf) form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.

      10.5.  <u>Governing Law</u>.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH FEDERAL BANKRUPTCY LAW, TO THE EXTENT APPLICABLE, AND WHERE STATE LAW IS IMPLICATED, THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS SHALL GOVERN, WITHOUT GIVING EFFECT TO CHOICE OF LAW PRINCIPLES THEREOF (EXCEPT FOR ANY LAWS OF THAT STATE WHICH WOULD RENDER SUCH CHOICE OF LAWS INEFFECTIVE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY, AND PERFORMANCE.

      10.6.  <u>Jurisdiction; Waiver of Jury Trial</u>

      (a)    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN THE PARTIES, WHETHER AT LAW OR IN EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT OR TRANSACTION CONTEMPLATED HEREBY; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT IF THE BANKRUPTCY COURT IS UNWILLING OR UNABLE TO HEAR ANY SUCH DISPUTE, THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN MASSACHUSETTS WILL HAVE SOLE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN THE PARTIES, WHETHER AT LAW OF IN EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT OR TRANSACTION CONTEMPLATED HEREBY.

      (b)    EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

      10.7.  <u>Notices</u>.  Unless otherwise set forth in this Agreement, any notices, consents, waivers, or other communications required or permitted by this Agreement shall be in writing and with a copy delivered by email to the persons set forth below, and shall be deemed given to a Party when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid) or (b) sent by email, if sent during the normal business hours of the recipient, with confirmation of transmission confirmed, in the case of each of clauses (a) and (b), to the following addresses or email addresses and marked to the attention of the person (by name or title) designated below (or to such other address, email address, or person as a Party may designate by notice to the other Party):

      If to Seller, to:

      Shamrock Finance LLC

*EXECUTION VERSION*

Attn: Kevin Devaney
9 Turnpike Road
Ipswich, Massachusetts 01938

With a copy (which shall not constitute effective notice) to:

Jeffrey D. Sternklar LLC
Attn: Jeffrey Sternklar, Esq.
101 Federal Street, Suite 1900
Boston, Massachusetts 02110-1861
Email: jeffrey@sternklarlaw.com

If to Buyer, to:

Lendbuzz, Inc.
Attn: Amitay Kalmar
100 Summer Street
Boston, Massachusetts 02110

With a copy (which shall not constitute effective notice) to:

DLA Piper LLP (US)
Andrew Sroka, Esq.
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Email: andrew.sroka@us.dlapiper.com

and

DLA Piper LLP (US)
Attn: Mark Friedman, Esq.
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Email: mark.friedman@us.dlapiper.com

and

DLA Piper LLP (US)
Attn: Matthew Sarna, Esq.
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Email: matthew.sarna@us.dlapiper.com

10.8.   <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon the Buyer and, subject to entry of the Bidding Procedures Order (with respect to the matters covered thereby) and

22

*EXECUTION VERSION*

the Sale Order, upon the Seller, and shall inure to the benefit of the Parties and their respective successors and permitted assigns, including any trustee or estate representative appointed in the Debtor's chapter 11 case or any successor chapter 7 case. No assignment of this Agreement or of any rights or obligations hereunder may be made by the Seller or the Buyer (by operation of law or otherwise) without the prior written consent of the other Party, which consent shall not be unreasonably withheld, and any attempted assignment without such required consents shall be void.

10.9.    <u>Severability</u>. Whenever possible, each provision or portion of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable Law. However, if any provision or portion of any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision or portion of any provision in such jurisdiction.

10.10. <u>Certain Interpretive Matters</u>.    The information contained in the Disclosure Schedules are disclosed solely for the purposes of this Agreement and may include items or information not required to be disclosed under this Agreement. No information contained in any Schedule shall be deemed to (i) be an admission by any party hereto to any third Person of any matter whatsoever, including an admission of any violation of any Laws or breach of any agreement, (ii) be deemed to be material (whether individually or in the aggregate) to the business, assets, liabilities, financial position, operations, or results of operations of the Seller, (iii) impose Liabilities on the Buyer in contravention of the express provisions of this Agreement, or (iv) give rise to circumstances which may result in a Material Adverse Effect solely by reason of it being disclosed. Information contained in a section, subsection, or individual Schedule (or expressly incorporated therein) of the Disclosure Schedules shall qualify the representations and warranties made in the identically numbered section or subsection. For the avoidance of doubt, nothing disclosed in the Disclosure Schedules is intended to broaden any representation or warranty contained in Article IV or V of this Agreement.

*[Signature Pages Follow]*

23

*EXECUTION VERSION*

      **IT WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

<div align="center">

**SELLER:**

</div>

SHAMROCK FINANCE LLC


_____
By: William R. Dewey, IV
Its: Chief Restructuring Officer


_____
By:  Kevin Devaney
Its:  Manager


<div align="center">

**BUYER:**

</div>

LENDBUZZ, INC.


_____
By:
Its:


<div align="center">

[Signature Page to Asset Purchase Agreement]

</div>

*EXECUTION VERSION*

**IT WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

<div style="text-align:center">

**SELLER:**

</div>

SHAMROCK FINANCE LLC

_____

By: William R. Dewey, IV
Its: Chief Restructuring Officer

_____

By: Kevin Devaney
Its: Manager

<div style="text-align:center">

**BUYER:**

</div>

LENDBUZZ, INC.

_____

By: Amitay Kalmar
Its: CEO

<div style="text-align:center">

[Signature Page to Asset Purchase Agreement]

</div>

*EXECUTION VERSION*

**IT WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

<div align="center">

**SELLER:**

</div>

SHAMROCK FINANCE LLC

_____
By: William R. Dewey, IV
Its: Chief Restructuring Officer


_____
By:  Kevin Devaney
Its:   Manager


<div align="center">

**BUYER:**

</div>

LENDBUZZ, INC.


_____
By:
Its:


<div align="center">

[Signature Page to Asset Purchase Agreement]

</div>

*EXECUTION VERSION*

**IT WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed and delivered as of the date first above written.

**SELLER:**

SHAMROCK FINANCE LLC

_____

By: William R. Dewey, IV
Its: Chief Restructuring Officer

_____

By:  Kevin Devaney
Its:  Manager

**BUYER:**

LENDBUZZ, INC.

_____

By:
Its:

[Signature Page to Asset Purchase Agreement]

# *EXHIBIT A*

**<u>EXHIBIT A</u>**

**<u>(TO BE PROVIDED)</u>**

# *EXHIBIT B*

## **EXHIBIT B**

## **(TO BE PROVIDED)**

# *EXHIBIT C*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

```
------------------------------------------------------------ x
                                       :
In re:                                 :        Chapter 11
                                       :
SHAMROCK FINANCE LLC,                  :        Case No. 21-10315-FJB
                                       :
              Debtor.                  :
                                       :
                                       :
------------------------------------------------------------ x
```

**INTERIM BID PROCEDURES ORDER REGARDING MOTION OF THE DEBTOR
FOR ENTRY OF AN ORDER (A) ESTABLISHING BID PROCEDURES; (B)
APPROVING BID PROTECTIONS; (C) APPROVING FORM AND MANNER OF
NOTICE; (E) SCHEDULING A HEARING TO CONSIDER ANY PROPOSED SALE; (F)
AUTHORIZING THE DEBTOR TO SELL ASSETS FREE AND CLEAR OF LIENS
PURSUANT TO 11 U.S.C. §363, AND (F) GRANTING CERTAIN RELATED RELIEF**

This matter coming before the Court upon the "*Motion of the Debtor for Entry of an Order
(A) Establishing Bid Procedures; (B) Approving Bid Protections; (C) Approving Form and
Manner of Notice; (E) Scheduling A Hearing To Consider Any Proposed Sale; (F) Authorizing
The Debtor To Sell Assets Free and Clear of Liens Pursuant To 11 U.S.C. §363, and (F) Granting
Certain Related Relief*" [Docket No. ___] (the "Motion"), filed by Shamrock Finance LLC (the
"Debtor") in the above-captioned chapter 11 case for entry of an order (this "Order") seeking
expedited consideration for entry of this order (the "Bid Procedures Order") (a) authorizing and
approving the Bid Procedures attached to this Order as **Exhibit 1** (the "Bid Procedures") in
connection with a Sale, (b) approving the Bid Protections (defined below), (c) approving the form
and manner of notice of any Auction and any Sale Hearing (each defined below), (d) scheduling
the Sale Hearing, if applicable, and setting other related dates and deadlines, attached to this Order
as **Exhibit 2**, and (e) granting related relief, all as further described in the Motion; and this Court

having found that (i) this Court has jurisdiction over the Debtor, its estate, property of its estate, and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), (iv) venue of this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no other or further notice of the Motion is required under the circumstances; and this Court having determined that the Debtor has established just cause for the relief granted in this Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

A.    **Limitation of Notice.**    Notice of the hearing to consider entry of this Bid Procedures Order shall be and hereby is limited as set forth in the Motion, and no further notice of the hearing to consider entry of this Bid Procedures Notice is required.

B.    **Bid Procedures.**    The Debtor has articulated good and sufficient reasons for authorizing and approving the Bid Procedures attached to this Order as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to achieve the highest or otherwise best offer and to maximize the value of the Debtor's estate.  The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the Sale, the conduct of the Auction and the occurrence of the Sale, and any party desiring to submit a bid shall do so strictly in accordance with the terms of the Bid Procedures and this Order.

C.    **Sale Notice.**    The notice, substantially in the form attached to the Bid Procedures as **Exhibit 3**, provided by the Debtor regarding the Sale, the Auction, and the Sale Hearing (the

2

"Sale Notice") satisfies MLBR 6004-1(d)(1)(B) and all of the foregoing is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bid Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets subject to the Sale; (v) instructions for obtaining a copy of a form asset purchase agreement, with which interested parties can use to submit bids; and (vi) representations describing any Sale as being free and clear of all liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other encumbrances attaching with the same validity and priority to the proceeds from any Sale.

   **D.**  **Other Findings.** The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact in this Order constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law in this Order constitute findings of fact, they are adopted as such.

   **NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

  1.  The Motion is **GRANTED**, as set forth in this Order.

  **Dates and Deadlines.** The dates and deadlines appearing in the Motion and in **Exhibit 2** to this Bid Procedures Order are hereby approved and established as if set forth here at length.

  2.  **Sale Hearing.** For the avoidance of doubt, the Sale Hearing will commence on [**March 114 - 16, 2022**] at [__:__], before The Honorable Frank J. Bailey of the United States

<div align="center">3</div>

Bankruptcy Court for the District of Massachusetts, [enter court address / zoom information to come, etc.].

3.     **Sale Objection Deadline.**  For the avoidance of doubt, objections, if any, to the Motion and the Sale to the Successful Bidder, except objections solely related to the identity of the Successful Bidder, the adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder (the "Initial Objections"), must be filed with the Court and served on all parties entitled to service thereof by [**March 11, 2022**] at [4:30 p.m., prevailing Eastern time] (the "Sale Objection Deadline")y.  Objections solely to the conduct of the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder other than the Stalking Horse Bidder must be filed with the Court and served on all parties entitled to service thereof by [**March 11, 2022**] at [4:30 p.m., prevailing Eastern time].  In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), and any order of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and timely served on all parties entitled to notice thereof, including (i) counsel to the Debtor, (ii) counsel to the Committee and (iii) counsel to the Stalking Horse Bidder.

**Bid Procedures and Related Relief.**

4.     The Bid Procedures in the form attached to this Bid Procedures Order as **Exhibit 1** and incorporated by reference as though set forth fully in this Order, are hereby approved in their entirety.  The Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale, and any party desiring to submit a higher or otherwise better offer for the Purchased Assets must comply with the terms of the Bid Procedures and this Order.  The Bid

4

Procedures shall also govern the terms on which the Debtor will proceed with the Auction, the Sale, or the selection of the Stalking Horse Bidder as the Successful Bidder. The Debtor is authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures.

5.      The failure to specifically include or reference any particular provision, section, or article of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision, section, or article, it being the intent of this Court that the Bid Procedures are authorized in their entirety.

**<u>Auction.</u>**

6.      The Debtor is authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary, in the discretion of the Debtor in consultation with the Consultation Parties, to conduct and implement the Auction as set forth in the Bid Procedures. Unless otherwise set forth herein, the Bid Procedures shall govern and control all manner of bidding and the Auction in accordance with its terms.

7.      Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith bona fide offer, and (iii) it intends to consummate the proposed Sale if selected as the Successful Bidder.

8.      Other than as expressly set forth in this Order or the Bid Procedures, the Debtor (in consultation with the Consultation Parties) reserves the right as it may determine in its sole discretion to be in the best interests of its estate and in the exercise of its fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next

5

highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in compliance with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) impose additional terms and conditions with respect to all potential bidders (other than the Stalking Horse Bidder); (f) extend the deadlines set forth in this Order or in the Bid Procedures, (g) modify the Bid Procedures without prior notice or Court order; and (h) continue or cancel the Auction or the Sale Hearing, including by announcement in open court without further notice.

9.      In recognition of the considerable time, energy, and resources that the Stalking Horse Bidder has expended in connection with the Stalking Horse Bidder is not the Successful Bidder (or if the Debtor consummates Successful Bidder (or if the Debtor consummates any plan or sale of the Purchased Assets other than the Stalking Horse Transaction), the Stalking Horse Bidder shall be entitled to the Bid Protections, including a Break-Up Fee equal to the $150,000, and an Expense Reimbursement of up to $50,000, both of which shall be payable solely from and subject to the Debtor's receipt of the proceeds from an Alternative Transaction.  Subject to the occurrence of an Alternative Transaction and the Debtor's receipt of the proceeds, the Bid Protections shall be deemed allowed administrative expenses under sections 503(b) and 507(a)(2) of the Bankruptcy Code and shall be paid in accordance with the provisions of the Stalking Horse APA in the event that the Stalking Horse Bidder is not the Successful Bidder.

**Sale Hearing Notice and Related Relief.**

10.     The Sale Notice is hereby approved.

**Other Related Relief.**

6

11.　　Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

12.　　Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13.　　To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced in this Order or the Motion, the provisions of this Order shall control.

14.　　The Debtor is authorized and empowered to take any actions it deems necessary to implement the relief granted in this Order.

15.　　This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or enforcement of this Order.

**SO ORDERED**

Dated:  February ___, 2022

_____
　　　　　Hon. Frank J. Bailey
　　　　　United States Bankruptcy Judge

7

<u>EXHIBIT 1</u>

**Bid Procedures**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

```
------------------------------------------------------------ x
                                      :
In re:                                :        Chapter 11
                                      :
SHAMROCK FINANCE LLC,                 :        Case No. 21-10315-FJB
                                      :
                        Debtor.       :
                                      :
                                      :
------------------------------------------------------------ x
```

## <u>BID PROCEDURES</u>

Shamrock Finance LLC, a Massachusetts limited liability company, as debtor in possession in the above-captioned chapter 11 case (the "<u>Debtor</u>") has executed that certain *Asset Purchase Agreement* (together with all exhibits, schedules, and attachments thereto, the "<u>APA</u>"), dated as of February 2, 2022, with Lendbuzz, Inc. ("<u>Lendbuzz</u>"), by which Lendbuzz or a designee of Lendbuzz as permitted pursuant to the APA (the "<u>Stalking Horse Bidder</u>") proposes to purchase certain of the Debtor's assets (the "<u>Purchased Assets</u>") pursuant to a sale under section 363 of the Bankruptcy Code. The Stalking Horse Bidder's proposal to acquire the Debtor's Purchased Assets in accordance with the APA is referred to as the "<u>Stalking Horse Transaction</u>."

On [_____, 2022], the Bankruptcy Court entered an order [Docket No. __] (the "<u>Order</u>") approving these Bid Procedures (the "<u>Bid Procedures</u>"). These Bid Procedures set forth the process by which the Debtor, in consultation with the Consultation Parties (defined below), will solicit and evaluate higher or otherwise better Bids for the acquisition of the Purchased Assets. If the Debtor receives one or more Qualified Bids, in addition to the Stalking Horse Transaction, the Debtor will conduct an auction (the "<u>Auction</u>") among such Qualified Bidders in accordance with these Bid Procedures. If the Debtor does not receive a Qualified Bid (other than that of the Stalking Horse Bidder), the Debtor will not conduct an Auction and shall designate the Stalking Horse Bidder as the Successful Bidder.

The Debtor will consider Bids that are structured as an offer to purchase the Purchased Assets in a sale under section 363 of the Bankruptcy Code (a "<u>Sale</u>").

## KEY SALE PROCESS DATES

Subject to the Debtor's rights set forth in these Bid Procedures, the proposed key dates for the sale process are as follows:

| | |
|---|---|
| March 11, 2022 | Bid Deadline |
| March 11, 2022 | Deadline to object ("Sale Objection Deadline")[1] to Sale ("Sale Objections") |
| [March 14 - 16, 2022] | Auction to be held (if necessary) |
| [March 14 - 16, 2022] | Sale Hearing |
| March 18, 2022 | Closing |

## Marketing Process

### I.    Contact Parties

The Debtor may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder (each, a "Potential Bidder") an "Information Package" consisting of: (i) a copy of these Bid Procedures, the Order, and the Motion; (ii) a form confidentiality agreement and non-solicitation agreement (a "Confidentiality Agreement"), which shall include typical non-disclosure provisions and other agreements by the Potential Bidder not to solicit employees of the Debtor; and (iii) such other materials as may be appropriate under the circumstances.

For purposes of these Bid Procedures, information that must be provided to the "Notice Parties" must be provided to the following parties: (i) counsel to the Debtor, Jeffrey D. Sternklar LLC, 101 Federal Street, 19th Floor, Boston, MA 02110 [attn. Jeffrey D. Sternklar, jeffrey@sternklarlaw.com]; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"), Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109 [Attn: Harold B. Murphy, hmurphy@murphyking.com]; (iii) counsel to the Stalking Horse Bidder, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, MD 21209-3600 [attn. Mark Friedman, mark.friedman@us.dlapiper.com]; and (iv) the Office of the United States Trustee for Region 1, J.W. McCormack Post Office & Courthouse, 5 Post Office Sq., 10th Fl, Ste. 1000, Boston, MA 02109 [Attn: Eric K. Bradford, erik.k.bradford@usdoj.gov].

For purposes of these Bid Procedures, the term "Consultation Parties" shall mean the Committee and its counsel and other advisors.

---

[1]    This objection deadline applies to all objections to the Motion and the sale of the Purchased Assets to a Successful Bidder, with the exception of objections solely related to the identity of the Successful Bidder, and adequate assurance of future performance under section 365 of the Bankruptcy Code, if any, by the Successful Bidder.

EAST\187422366.1

## II.    Participation Requirements

To receive due diligence information, including full access to the Debtor's electronic data room and to additional non-public information regarding the Debtor, a Potential Bidder, other than the Stalking Horse, must deliver the following documents (collectively, the "Preliminary Bid Documents") by email to each of: (i) counsel to the Debtor, Jeffrey D. Sternklar LLC, 101 Federal Street, 19th Floor, Boston, MA 02110 [attn. Jeffrey D. Sternklar, jeffrey@sternklarlaw.com]; and (ii) counsel to the Committee, Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109 [Attn: Harold B. Murphy, hmurphy@murphyking.com]:

a.    an executed Confidentiality Agreement on terms acceptable to the Debtor, to the extent not already executed; and

b.    evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the party that will bear liability for a breach).

The Debtor, in consultation with the Committee, shall determine in its sole discretion whether any Potential Bidder has the financial capacity to close a proposed transaction after reviewing the information set forth above.  Forthwith after such determination, the Debtor shall notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "Bidder") may submit Bids.

As soon as reasonably practicable after the Debtor, in consultation with the Consultation Parties, determine that a Potential Bidder is a Bidder, the Debtor will provide such Bidder with access to reasonable due diligence information as requested by such Bidder (to the extent such Bidder has not already been provided such information).  All due diligence requests must be directed to counsel to the Debtor.  Counsel to the Debtor will work to facilitate meetings between any interested Bidder and the Debtor's management team.  For all Potential Bidders, the due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtor will have no obligation to furnish any due diligence information.

The Debtor and its advisors will coordinate all reasonable requests from Bidders for additional information and due diligence access made prior to the Bid Deadline.  The Debtor, in consultation with the Consultation Parties, may decline to provide such information to Bidders who, in the Debtor's sole business judgment and in consultation with the Consultation Parties, have not established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a Transaction.

For any Bidder who is a competitor of the Debtor, in litigation (including appeals therefrom) with the Debtor or is affiliated with any competitor or litigation counterparty of the

10

Debtor, the Debtor reserves the right to withhold, in consultation with the Consultation Parties, any diligence materials that the Debtor determines are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated Transaction.

### Stalking Horse Bid Deadline and Bid Protections

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder at all times. Likewise, the APA shall at all times be deemed a Qualified Bid (as defined herein). The Stalking Horse is not required to provide any Deposit other than the deposit set forth in the APA.

In recognition of the considerable time, energy, and resources that the Stalking Horse Bidder has expended in connection with the Stalking Horse Transaction, the Debtor has agreed that if the Stalking Horse Bidder is not the Successful Bidder (or if the Debtor consummates any sale of all or substantially all of the Debtor's Assets other than the Stalking Horse Transaction), the Stalking Horse Bidder shall be entitled to the following Bid Protections, to be paid solely from the proceeds of an Alternative Transaction: (1) a Break-Up Fee equal to $150,000, and (2) Expense Reimbursement of up to $50,000.

The Bid Protections are payable pursuant to the terms and conditions of, and under certain circumstances as set forth in, the APA.  Payment of the Bid Protections shall be governed by the APA and the Order, and shall only be payable, if at all, from the proceeds of an Alternative Transaction.  If the Debtor receives the proceeds of an Alternative Transaction, then the Bid Protections will be an allowed super-priority administrative expense claim in accordance with the terms of the APA and pursuant to the Order, senior to all other administrative expense claims against the Debtor's estate.

The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the Sale, and related matters, including the right to object to the conduct of the Auction and interpretation of these Bid Procedures.

### Auction Process

#### I.  Bid Deadline

A Bidder that desires to make a proposal, solicitation, or offer (each, a "<u>Bid</u>") shall transmit such proposal, solicitation, or offer via email to each of the Bid Recipients so as to be **actually received** by them or before [**March 11, 2022**] (the "<u>Bid Deadline</u>").

#### II.  Bid Requirements

Each Bid by a Bidder must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>"):

<div align="center">11</div>

Case 21-10315 Doc 343-2 Filed 02/08/22 Entered 02/08/22 15:10:44 Desc Exhibit
B Executed First Amended Asset Purchase Agreement With Exhibits Page 46 of 58

a.  <u>Purpose</u>: Each Bid must identify the assets it wishes to purchase, and, with respect to such assets, state that it includes an offer by the Bidder to purchase the Purchased Assets and any other assets of the estate that the Bidder seeks to purchase in its Bid.

b.  <u>Purchase Price</u>: Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction, for example (the "<u>Purchase Price</u>"). Each Bid must allocate the Purchase Price among the Purchased Assets and any other assets of the estate that the Bidder proposes to purchase pursuant to the Bid, but such allocation shall not be binding on the Debtor.

c.  <u>Deposit</u>: Each Bid must be accompanied by a cash deposit of $150,000 in good and immediately available funds, wired to counsel to the Debtor's IOLTA client funds account or such other account as designated by the Debtor, pursuant to wire instructions provided by the Debtor..

d.  <u>Marked Agreement</u>: Each Bid must include, at a minimum, a draft asset purchase agreement (the "<u>APA</u>"), together with a redline version of the revised APA against the APA, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Bidder proposes to effectuate the Transaction (collectively, the "<u>Transaction Documents</u>"). Each Bidder's APA must provide (i) a commitment to close within two business days after all closing conditions are met and, in any event, no later than [**March 18**, **2022**], and (ii) a representation that the Bidder will use its reasonable best efforts to satisfy all applicable regulatory conditions.

e.  <u>Committed Financing</u>: To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include evidence of committed financing that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be acceptable to the Debtor in its sole discretion (in consultation with the Consultation Parties) and must be unconditional and not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtor (in consultation with the Consultation Parties).

f.  <u>Contingencies; No Financing or Diligence Outs</u>: A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

g.  <u>Identity</u>: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other

<div align="center">12</div>

financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtor's advisors should contact regarding such Bid.

h.      Authorization: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

i.      Substantial Contribution Waiver: Each Bid must contain an express waiver, effective upon submission of the Bid, of any substantial contribution claims by the Bidder.

j.      As-Is, Where-Is: Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

k.      Same or Better Terms: Each Bid shall be based on the Stalking Horse Bid as set forth herein and must be on terms that are not more burdensome than the terms of the Stalking Horse Bid, as determined by the Debtor in its sole discretion, in consultation with the Consultation Parties, and considering, among other factors, the scope and manner of the proposed transaction.

l.      Same Pool of Purchased Assets: Each Bid shall be for the same pool of Purchased Assets, as such Purchased Assets are set forth or otherwise described in the Stalking Horse APA, but may also include any other assets of the estate.

m.      Expenses; Disclaimer of Fees: Each Bid (other than that set forth in the APA) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed to abide by and honor the terms of the Bid Procedures and to refrain from submitting a Bid or seeking to

13

reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets reflected in such Bid.**

### III.   Designation of Qualified Bidders

A Bid will be considered a "Qualified Bid," and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtor, in consultation with the Consultation Parties, determines in its sole discretion that such Bid:

a.     satisfies the Bid Requirements;

b.     is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a time frame acceptable to the Debtor (in consultation with the Consultation Parties); and

c.     The Debtor (after consultation with the Consultation Parties) will use commercially reasonable efforts promptly to notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties (as defined below), as well as the Stalking Horse Bidder with a copy of each Qualified Bid.

If any Bid is determined not to be a Qualified Bid, the Debtor will refund such Bidder's Deposit promptly after the Bid Deadline.

Between the date that the Debtor notifies a Bidder that it is a Qualified Bidder and the Auction date, the Debtor may (in consultation with the Consultation Parties) discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures. As stated above, the Stalking Horse shall be deemed a Qualified Bidder at all times, and the APA shall be a Qualified Bid.

If any Bid is determined not be a Qualified Bid, the Debtor may (in consultation with the Consultation Parties) work with such Bidder to revise its Bid so that, as revised, it constitutes Qualified Bid. Potential Bidders shall have until the Qualified Bid Deadline to remedy any deficiencies with respect to non-conforming or non-Qualified Bids.

### IV.   The Auction

If necessary, the Auction shall take place at the same time as the Sale Hearing on **[March 14 - 16, 2022]** at [the United States Bankruptcy Court for the District of Massachusetts, Eastern

Division, Courtroom 1, J.W. McCormack Post Office & Court House, 5 Post Office Square, 12th Floor, Boston, MA 02109-3945.  or electronically and remotely [log in credentials].

No later than **[March 14, 2022]**, the Debtor will notify all Qualified Bidders of the highest or otherwise best Qualified Bid (the "Baseline Bid") and provide copies of the documents supporting the Baseline Bid, if any, to all Qualified Bidders.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtor (in consultation with the Consultation Parties) deems relevant in its sole discretion to the value of the Qualified Bid to the Debtor's estate, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof including any terms or consideration of such Qualified Bid; (d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Baseline Bid; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted according to the following procedures:

a.    The Debtor Shall Preside Over the Auction; Participation and Attendance at the Auction

The Debtor and its professionals shall direct and preside over the Auction.  The presiding Bankruptcy Judge may attend the Auction and hear and determine any and all controversies that may arise at the Auction.  At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.

Only Qualified Bidders that have submitted Qualified Bids by the Qualified Bid Deadline are eligible to participate at the Auction, subject to the terms of these Bid Procedures and other limitations as may reasonably be imposed by the Debtor in consultation with the Consultation Parties.  Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.  The Consultation Parties may attend the Auction. Other persons and entities who are not Qualified Bidders may attend the Auction solely at the discretion of the Debtor, in consultation with the Consultation Parties.  Only Qualified Bidders (including the Stalking Horse Bidder) will be entitled to make any Bids at the Auction.

Terms of Overbids

"Overbid" means any bid made at open cry at the Auction by a Qualified Bidder after the Debtor's announcement of the Baseline Bid.  Each Overbid must comply with the following conditions:

(i)    Minimum Initial Overbid.  Any Overbid following the Baseline Bid shall be no less than $250,000.

15

(ii)     <u>Minimum Overbid Increment</u>.  Any Overbid to a Prevailing Highest Bid (as defined below) shall be in increments of no less than $50,000.[2]

(iii)    <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtor may announce a deadline (the "<u>Overbid Round Deadline</u>"), subject to extension by the Debtor in consultation with the Consultation Parties, by which time any Overbids must be submitted to the Debtor.

(iv)     <u>Announcing Highest Bid</u>.  After each Overbid Round Deadline, the Debtor shall determine, in consultation with the Consultation Parties and taking into account the Bid Assessment Criteria, whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtor as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtor shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtor as the Prevailing Highest Bid, the identity of the bidder with the Prevailing Highest Bid, as well as the value attributable by the Debtor to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(v)      <u>Sealed Bidding</u>.  The Debtor may, in its sole discretion and in consultation with Consultation Parties, require bids be provided on a sealed, closed basis after any Overbid Round Deadline.

b.     <u>Consideration of Overbids</u>

The Debtor, in consultation with the Consultation Parties, reserves the right to adjourn the Auction as necessary to (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) provide Qualified Bidders with additional time to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to offer such additional evidence as the Debtor may require, such as with respect to financial capacity or sufficient funding or financing, in order to consummate the proposed Transaction at the prevailing Overbid amount.

c.     <u>Closing the Auction</u>

The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its sole discretion, after consultation with the Consultation Parties, and taking into account the Bid Assessment Criteria, to be the highest or otherwise best Qualified Bid for the Assets.  Such Qualified Bid shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder, the "<u>Successful Bidder</u>," and the Auction will be closed.  Such acceptance by the Debtor of the Successful Bid (to be made in accordance with the terms of this section IV(c) of the Bid Procedures) is conditioned upon approval by the Court of the Successful Bid.  Following the

---

[2]     Any Overbid to a Prevailing Highest Bid by any party other than the Stalking Horse Bidder must provide more value for the Debtor's estate than any prior bid after taking into account the Bid Protections in each round of bidding.

EAST\187422366.1

closing of the Auction, the Debtor shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets.

d.    <u>No Collusion; Good-Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction and provide the Debtor with affidavits or other evidence requested by the Debtor, for submission to the Court, that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith *bona fide* offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder.

**V.    Reservation of Rights**

Without prejudice to the rights of the Stalking Horse Bidder under the terms of the APA, the Debtor reserves its rights to modify these Bid Procedures, after consultation with the Consultation Parties, in any manner that they reasonably determine will best promote the goals of these Bid Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Sale, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

For the avoidance of doubt, nothing in these Bid Procedures shall prevent the Debtor from exercising its fiduciary duties under applicable law.

**VI.    Consent to Jurisdiction**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bid Procedures.

**VII.    Sale Hearing / Confirmation Hearing**

A hearing to consider approval of the Successful Bid (or to approve the APA, as applicable, if no Auction is held) (the "<u>Sale Hearing</u>") is proposed to take place immediately following the closing of the Auction, on **[March 14 - 16, 2022]**, at [the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, Courtroom 1, J.W. McCormack Post Office & Court House, 5 Post Office Square, 12th Floor, Boston, MA 02109-3945.  or electronically and remotely [log in credentials].  At the Sale Hearing, the Debtor will present such Successful Bid to the Court for approval.

**VIII.    Return of Deposit**

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtor in its sole discretion and shall be returned (other than with respect to the Successful Bidder) promptly after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor will not have any obligation to return the Deposit deposited

by such Successful Bidder, which may be retained by the Debtor as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtor, without the need for an additional hearing or order of the Court.

**IX.     No Modification of Bid Procedures**

These Bid Procedures may be modified with the express prior written consent of the Debtor, after consultation with the Consultation Parties, without advance notice or Court order.

EAST\187422366.1

## EXHIBIT 2

### Key Sale Process Dates

| | |
|---|---|
| March 11, 2022 | Bid Deadline |
| March 11, 2022 | Deadline to object[3] to Sale |
| [March 14 - 16, 2022] | Auction to be held (if necessary) |
| [March 14 - 16, 2022] | Sale Hearing |
| March 18, 2022 | Closing |

---

[3]    This objection deadline applies to all objections to the Motion and the sale of the Purchased Assets to a Successful Bidder, with the exception of objections solely related to the identity of the Successful Bidder, and adequate assurance of future performance under section 365 of the Bankruptcy Code, if any, by the Successful Bidder.

<u>**EXHIBIT 3**</u>

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

-------------------------------------------------------------- x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SHAMROCK FINANCE LLC, | : | Case No. 21-10315-FJB |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

-------------------------------------------------------------- x

<u>**NOTICE OF AUCTION AND SALE HEARING**</u>

**PLEASE TAKE NOTICE REGARDING THE FOLLOWING:**

1.    On March 12, 2021, Shamrock Finance LLC (the "<u>Debtor</u>") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Massachusetts (the "<u>Bankruptcy Court</u>").

2.    On February 7, 2022, the Debtor entered into a First Amended and Restated Asset Purchase Agreement (the "<u>Stalking Horse APA</u>") with Lendbuzz, Inc. ("<u>Lendbuzz</u>"), by which Lendbuzz or a designee of Lendbuzz as permitted pursuant to the Stalking Horse APA (collectively, the "<u>Stalking Horse Bidder</u>") will acquire certain of the Debtor's assets (the "<u>Purchased Assets</u>").

3.    On [_____, 2022], in connection with the proposed sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code (the "<u>Sale</u>") to the successful bidder (the "<u>Successful Bidder</u>") at an auction (the "<u>Auction</u>"), the Debtor filed a motion [Docket No. __] (the "<u>Motion</u>"), seeking, among other things, (i) entry of an order (the "<u>Bid Procedures Order</u>") approving the bidding procedures (the "<u>Bid Procedures</u>") governing the solicitation of higher or otherwise better Bids; (ii) establishing procedures for the assumption and assignment of certain executory contracts; (iii) scheduling a Sale Hearing; and (iv) granting related relief [Docket No. __].

4.    On [_____, 2022], the Bankruptcy Court entered the Bid Procedures Order [Docket No. __]. Pursuant to the Bid Procedures Order, if one or more Qualified Bids are received before the Bid Deadline (defined below), the Debtor will conduct the Auction among such

Qualified Bidders to determine the highest or otherwise best Qualified Bid, at beginning on [**March 11, 2022**], at the time and place, and in the manner, described in the Bid Procedures.

5.      Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to the terms of the Bid Procedures and other limitations as may reasonably be imposed by the Debtor.  Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

6.      If the Debtor does not receive a Qualified Bid (other than that of the Stalking Horse Bidder), the Debtor will not conduct an Auction and shall designate the Stalking Horse Bidder as the Successful Bidder.

7.      A hearing to consider approval of the Successful Bid (or to approve the Stalking Horse APA, as applicable, if no Auction is held) (the "Sale Hearing") shall take place immediately after the closing of the Auction on [**March 14 - 16, 2022**], at [the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, Courtroom 1, J.W. McCormack Post Office & Court House, 5 Post Office Square, 12th Floor, Boston, MA 02109-3945.  or electronically and remotely [log in credentials]. at _____ . m.  At the Sale Hearing, the Debtor will present such Successful Bid to the Bankruptcy Court for approval.

8.      Objections, if any, to the Motion and the sale of the Purchased Assets to a Successful Bidder, must be filed with the Bankruptcy Court and served upon counsel to the Debtor and counsel to the Stalking Horse Bidder so as to be actually received by [**March 11, 2022**][4] .  All such objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Bankruptcy Court no later than the applicable objection deadline and served on (i) counsel to the Debtor and (ii) counsel to the Stalking Horse Bidder.  ***Subject to footnote 1 below, any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Purchased Assets as approved by any Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363(f)(2) of the Bankruptcy Code.***

9.      This notice is subject to the fuller terms and conditions of the Motion, the Bid Procedures, and the Bid Procedures Order.  In the event of any conflict, the Bid Procedures shall control, and the Debtor encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the Sale and/or copies of any related document, including the Motion, the Bid Procedures and the Bid Procedures Order, may make a written request to counsel for the counsel for the Debtor and shall be provided electronic copies at

---

[4] This objection deadline applies to all objections to the Motion and the sale of the Purchased Assets to a Successful Bidder, with the exception of objections solely related to the identity of the Successful Bidder, and adequate assurance of future performance under section 365 of the Bankruptcy Code, if any, by the Successful Bidder, all of which can be asserted at the Sale Hearing.

21

no charge. In addition, copies of the Motion, the Bid Procedures Order, and this notice are available upon written request by e-mail to counsel for the Debtor at jeffrey@sternklarlaw.com, and also can be found through PACER on the Bankruptcy Court's website, https://ecf.mab.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court.

<div style="margin-left:50%;">

SHAMROCK FINANCE LLC,
By its attorney,


 /s/  Jeffrey D. Sternklar
Jeffrey D. Sternklar (BBO #549561)
JEFFREY D. STERNKLAR LLC
19TH Floor
101 Federal Street
Boston, MA  02110
jeffrey@sternklarlaw.com
Tel:  617-207-7800
Fax:  617-507-6530

</div>

Dated:  February    , 2022

# EXHIBIT E

## <u>EXHIBIT E</u>

**Material Terms to Devaney Employment Agreement**

- **Position:** Floor Plan Manager
- **Start Date:** To be determined in connection with consummation of sale to Lendbuzz, Inc. (the "<u>Company</u>").
- **Nature of Relationship:** At-will employment.
- **Base Compensation:** $150,000 / year
- **Bonus Compensation:** $100,000, subject to sales and loss targets to be determined at the Company's discretion
- **Equity Compensation:** None
- **Benefits:** Standard entitlement to enroll in Company's health insurance plan, dental insurance plan, and other various standard employee benefits.