## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) **Chapter 11** |
| **SHAMROCK FINANCE, LLC,** | ) |
| | ) **Case No. 21-10315-JEB** |
| Debtor. | ) |
| | ) |

## JOINT LIQUIDATING PLAN OF REORGANIZATION

**MURPHY & KING, Professional Corp.**
28 State Street, Suite 3101
Boston, MA 02109
Harold B. Murphy, Esq.
Andrew G. Lizotte, Esq.

Telephone: (617) 423-0400
Facsimile:  (617) 423-0498

Counsel to Creditors' Committee

**JEFFREY D. STERNKLAR, LLC**
101 Federal Street
19th Floor
Boston, MA 02210
Jeffrey D. Sternklar, Esq.

Telephone: (617) 207-7800
Facsimile: (617) 507-6530

Counsel to Debtor

Dated: May 16, 2022

Shamrock Finance, LLC, the debtor and debtor-in-possession in the above case, and the Official Committee of Unsecured Creditors, jointly propose the following liquidating plan of reorganization under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

1.1    "Administrative Expense Claim" shall mean a Claim for costs and expenses of administration of the Bankruptcy Case that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the Debtor; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code; and (d) all other Claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court.

1.2    "Allowed" shall mean, with reference to any Claim:

(a)    A Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)    A Claim as to which a timely proof of claim has been filed by the Bar Date or within the time permitted by Bankruptcy Rule 3003(c)(3) and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c)    A Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code;

1

(d)     Any Claim expressly allowed or provided for in the Plan or pursuant to an order of the Bankruptcy Court including, without limitation, the Confirmation Order.

**1.3**    "Asset(s)" shall mean all of the Debtor's right, title, and interest of any nature in property of any kind, wherever located, as set forth in 11 U.S.C. §541 and the proceeds thereof including without limitation Causes of Action provided, however, that the Participating Noteholder Claims and proceeds thereof and the Litigation Reserve shall not be an Asset.

**1.4**    "Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.5**    "Ballot" means the form approved by the Bankruptcy Court and distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated: (i) acceptance or rejection of the Plan; and (ii) whether a Noteholder elects to be a Participating Noteholder.

**1.6**    "Bankruptcy Case" shall mean the Debtor's bankruptcy case pending in the Bankruptcy Court.

**1.7**    "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

**1.8**    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.9**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.10**    "Bar Date" shall mean June 4, 2021.

**1.11**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.12**    "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.13**    "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions included in the list of approved institutions promulgated by the Office of the United States Trustee.

**1.14** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to Claims or Equity Interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims and defenses for the violation of M.G.L. c. 93A, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds.

**1.15** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.16** "Class(es)" shall mean those classes designated in Article III of the Plan.

**1.17** "Class 4 Liquidating Trust Beneficiaries" shall mean holders of Allowed Class 4 Claims.

**1.18** "Class 5 Liquidating Trust Beneficiaries" shall mean holders of Allowed Class 5 Claims.

**1.19** "Class 6 Liquidating Trust Beneficiaries" shall mean holders of Allowed Class 6 Claims.

**1.20** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.21** "Committee" shall mean the official committee of unsecured creditors appointed by the United States Trustee in the Bankruptcy Case pursuant to Section 1102 of the Bankruptcy Code.

**1.22** "Confirmation" shall mean confirmation of this Plan by the Bankruptcy Court under Section 1129 of the Bankruptcy Code.

**1.23** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**1.24** "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on Confirmation of the Plan.

**1.25**    "<u>Confirmation Order</u>" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.26**    "<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.27**    "<u>Cure Claims</u>" means pre-petition amounts due to counterparties to Executory Contracts and Unexpired Leases that have been assumed by the Debtor.

**1.28**    "<u>Debtor</u>" shall mean Shamrock Finance, LLC.

**1.29**    "<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all amendments, exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.30**    "<u>Disputed Claim</u>" shall mean:

(a)    If no proof of claim relating to a Claim has been filed, a Claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor, Liquidating Trustee, or a party with standing to dispute the Claim in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)    A Claim that is a Contingent or Unliquidated Claim.

**1.31**    "<u>Disputed Claim Amount</u>" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.32**    "<u>Disputed Claims Reserve</u>" shall have the meaning set forth in Section 6.5 of the Plan.

**1.33**    "<u>Distribution Record Date</u>" shall mean the date that is ten (10) days prior to the entry of the Confirmation Order.

**1.34**    "<u>DJJD Adversary Proceeding</u>" shall mean Adversary Proceeding No. 22-01002, styled *Shamrock Finance, LLC v. DJJD, Inc., Damian Robert, and Melanie Robert.*

**1.35** "Effective Date" shall mean the first Business Day on which the conditions set forth in Article XI of the Plan have been satisfied.

**1.36** "Equity Interest" shall mean the interest of any holder of any voting or non-voting equity of the Debtor, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity.

**1.37** "Estate" shall mean the estate created by the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.38** "Estate Fiduciary" shall mean the Plan Administrator or Liquidating Trustee, as applicable, and when referred to in the plural shall refer to both the Plan Administrator and the Liquidating Trustee.

**1.39** "Exculpated Parties" means all Persons that are or were at any time on or after the Petition Date (solely in such capacity or position and whether or not any such Person currently retains such capacity or position): (i) the Debtor; (ii) the Committee and all current and former members of the Committee, (iii) the directors, officers, agents, members of management and other employees of the Debtor, respectively; and (iv) predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of any of the Persons identified in (i) through (iv) above on or after the Petition Date; provided, however, that for the avoidance of doubt, none of the Exculpated Parties shall be entitled to exculpation with respect to any Participating Noteholder Claim.

**1.40** "Executory Contract" shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.41** "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal, seek leave to appeal or certiorari, or request re-argument, review or rehearing has expired and as to which no appeal, petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been timely filed, or (b) any appeal, petition for leave to appeal or certiorari, re-argument, review, or rehearing that has been or may be made has been resolved by the highest court to which the order or judgment was appealed, from which leave to appeal or certiorari was sought, or to which the request was made, and no further appeal or petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been or can be taken or granted, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.42**   "Impaired" shall mean, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.43**   "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) all Liens shall be discharged as of the Effective Date unless specifically preserved under the Plan.

**1.44**   "Liquidating Trust" shall mean the Liquidating Trust of Shamrock Finance, LLC established pursuant to the Liquidating Trust Agreement.

**1.45**   "Liquidating Trust Agreement" shall mean the Liquidating Trust Agreement of Shamrock Finance, LLC in the form substantially similar to that annexed as Exhibit "A" of the Plan.

**1.46**   "Liquidating Trust Assets" shall mean, collectively, the Assets and the Participating Noteholder Claims.

**1.47**   "Liquidating Trust Beneficiaries" shall mean, collectively, the Class 4 Liquidating Trust Beneficiaries, the Class 5 Liquidating Trust Beneficiaries, and the Class 6 Liquidating Trust Beneficiaries.

**1.48**   "Liquidating Trustee" shall mean that Person designated by the Plan Proponents to serve as Liquidating Trustee of the Liquidating Trust and any successor thereto designated by the Oversight Committee.  The Liquidating Trustee may be the same Person as the Plan Administrator.

**1.49**   "Litigation Reserve" shall mean the sum of $100,000.

**1.50**   "Net Asset Proceeds" shall mean the Cash proceeds of the Assets recovered by the Liquidating Trustee, net of the Trust Reserve and the Plan Reserve.

**1.51**   "Net Participating Noteholder Claim Proceeds" shall mean the Cash Proceeds of the Participating Noteholder Claims recovered by the Liquidating Trustee, less the fees, costs, and expenses incurred by the Liquidating Trust in the pursuit of the Participating Noteholder Claims in excess of the Litigation Reserve.

**1.52**   "Non-Participating Noteholders" shall mean those Noteholders who are not Participating Noteholders.

**1.53**   "Noteholder" shall mean a Person who loaned money to the Debtor.

**1.54**   "Other Unsecured Claim" shall mean a Claim that: (a) is not an Administrative Expense Claim; (b) is not a Secured Claim, (c) is not entitled to priority of payment under Section 507 of the Bankruptcy Code, (d) is not an Equity Interest, and (e) is not a Noteholder Claim.

**1.55**    "Oversight Committee" shall consist of those members of the Committee or their designees who elect to serve and who shall perform those services as set forth in Article VII herein.

**1.56**    "Participating Noteholders" shall mean those Noteholders who: (i) have Participating Noteholder Claims; and (ii) who elect, by indicating on their Ballot, to be Class 5 claimants and to transfer and assign their Participating Noteholder Claims to the Liquidating Trust.

**1.57**    "Participating Noteholder Claims" shall mean Claims against David Pierce and/or Keith Harris, and any Person affiliated with them or acting in concert with them including, without limitation: (i) claims for fraud, aiding and abetting in the commission of fraud, misrepresentation, unjust enrichment, and/or related claims; (ii) claims for violation of the Federal Securities Act and the Massachusetts Uniform Securities Act; (iii) claims for acting as an unregistered broker-dealer or unregistered agent, as well as unregistered investment adviser or unregistered investment adviser representative, through the solicitation of Participating Noteholders for loans to the Debtor.

**1.58**    "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.59**    "Permitted Investment" shall mean Cash Equivalents having maturities sufficient to enable the Liquidating Trustee to make the payments required under the Plan.

**1.60**    "Petition Date" shall mean March 12, 2021.

**1.61**    "Plan" shall mean this *Joint Liquidating Plan of Reorganization* including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.62**    "Plan Administrator" shall mean that Person designated by the Plan Proponents to serve as Plan Administrator under the Plan and any successor Plan Administrator designated by the Oversight Committee. The Plan Administrator may be the same Person as the Liquidating Trustee.

**1.63**    "Plan Distribution Date" means with respect to any Claim (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed.

**1.64**    "Plan Reserve" shall mean such amounts as set aside to fund a reserve for the payment of Administrative Expense Claims, Professional Fee Claims, Allowed Priority Tax Claims, Allowed Class 1, Class 2, and Class 3 Claims, and other projected costs and expenses to implement the Plan and wind-down the Debtor.

**1.65**    "Plan Proponents" shall mean the Debtor and the Committee.

**1.66**   "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.67**   "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.68**   "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 1103, or 1104 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Sections 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.69**   "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.70**   "Pro Rata" shall mean, (a) when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim or Equity Interest, the ratio of (i)(1) the amount of property distributed on account of such Claim or Equity Interest to (2) the amount of such Claim or Equity Interest, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims, or Equity Interests, of the Class to (2) the amount of all Allowed Claims or Equity Interests in that Class.

**1.71**   "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.72**   "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.73**   "Trust Reserve" shall mean such amount, as determined by the Liquidating Trustee in its sole discretion, as shall be reserved from the Assets to pay the actual and projected fees, costs, and expenses associated with the administration of the Liquidating Trust and the distribution of Liquidating Trust Assets.

**1.74**   "Unexpired Lease" shall mean a lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.75**   "Unimpaired" shall mean a Claim or Equity Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

### 2.1    Non-Classification.

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

### 2.2    Administrative Expense Claims.

(a)    General.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, (b) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date on which an Allowed Administrative Expense Claim becomes payable under any agreement or applicable law relating thereto, each holder of such Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Expense Claim based on a liability incurred by the Debtor in the ordinary course of business during the Bankruptcy Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Expense Claim may be paid when payable under applicable law or on such other terms as may be agreed to between the holder of such Claim and the Estate Fiduciary.

(b)    U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c)    Professional Compensation and Expense Reimbursement Claims.

(i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

(ii)    Any Allowed Professional Fee Claim shall receive: (i) payment upon entry of a Final Order approving such Claim, or (ii) payment as agreed between the holder of the Allowed Administrative Expense Claim and the Liquidating Trustee.

(iii)    All fees and expenses of Professionals retained by the Estate Fiduciaries for services rendered after the Effective Date shall be paid by the Liquidating Trustee upon the receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Liquidating Trustee agree.  No further order or authorization from the Bankruptcy

9

Court shall be necessary to permit the payment of the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3    Priority Tax Claims.**

On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, (i) payment in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, or (ii) payment as agreed between the holder of the Allowed Priority Tax Claim and the Liquidating Trustee.

## ARTICLE III

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

**3.1    Claim and Equity Interest Categories.**

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Priority Claims | Unimpaired | No |
| 2 | DJJD, Inc. Secured Claim | Unimpaired | No |
| 3 | Miscellaneous Secured Claims | Unimpaired | No |
| 4 | Non-Participating Noteholder Claims | Impaired | Yes |
| 5 | Participating Noteholder Claims | Impaired | Yes |
| 6 | Other Unsecured Claims | Impaired | Yes |
| 7 | Equity Interest | Impaired | No |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1    **Class 1 – Priority Claims**

   (a)    <u>Classification</u>. Class 1 consists of the Allowed Priority Claims.

   (b)    <u>Impairment and Voting</u>. The Priority Claims are Unimpaired under the Plan and shall be deemed to have accepted the Plan.

   (c)    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of the Allowed Priority Claims, the holders of Allowed Class 1 Claims shall be paid by the Liquidating Trustee in full in Cash as soon as practicable after the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim.

4.2    **Class 2 – DJJD, Inc. Secured Claim.**

   (a)    <u>Classification</u>. Class 2 consists of the Allowed DJJD, Inc. Secured Claim.

   (b)    <u>Impairment and Voting</u>. The DJJD, Inc. Secured Claim is Unimpaired under the Plan and shall be deemed to have accepted the Plan.

   (c)    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of the Allowed DJJD, Inc. Secured Claim, the holder of the Class 2 Claim shall be paid by the Liquidating Trustee in full in Cash such amount as may be agreed by the Liquidating Trustee and DJJD or otherwise as Allowed by Final Order in the DJJD Adversary Proceeding as soon as practicable after entry of such Final Order.

   (d)    <u>Liens</u>. The validity, priority, and extent of any Liens held by DJJD shall be as agreed to by the Liquidating Trustee and DJJD or otherwise as determined by the Bankruptcy Court in the DJJD Adversary Proceeding.

4.3    **Class 3- Miscellaneous Secured Claims**

   (a)    <u>Classification</u>. Class 3 consists of the Allowed Miscellaneous Secured Claims.

   (b)    <u>Impairment and Voting</u>. The Miscellaneous Secured Claims are Unimpaired under the Plan and shall be deemed to have accepted the Plan.

   (c)    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of the Miscellaneous Secured Claims, the holders of the Class 3 Claims shall be paid by the Liquidating Trustee in full in Cash such

amount as may be agreed by the Liquidating Trustee and the claimant or otherwise as Allowed by Final Order as soon as practicable after entry of such Final Order.

(d)   <u>Liens</u>.  The validity, priority, and extent of any Liens held by the Class 3 holder shall be as agreed to by the Liquidating Trustee and the claimant or otherwise as determined by the Bankruptcy Court.

**4.4   Class 4 – Non-Participating Noteholder Claims.**

(a)   <u>Classification</u>.  Class 4 consists of the Allowed Non-Participating Noteholder Claims.

(b)   <u>Impairment and Voting</u>.  The Non-Participating Noteholder Claims are Impaired under the Plan.  Each holder of a Non-Participating Noteholder Claim shall be entitled to vote to accept or reject the Plan.

(c)   <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, and release of their respective Allowed Non-Participating Claims, each holder of an Allowed Non-Participating Claim shall receive from the Liquidating Trustee on the Plan Distribution Date its *pro rata* share of its beneficial interest in the Liquidating Trust as a Class 4 Liquidating Trust Beneficiary, entitling such holder to receive proceeds on account of such beneficial interest as further set forth in Section 7.2 herein.

(d)   <u>Ballot Election</u>.  The holder of a Noteholder Claim may elect to be treated as a Class 5 Participating Noteholder by indicating same on the Ballot and delivering the Ballot to the Plan Proponents no later than the deadline for voting on the Plan provided, however, that a Class 4 claimant may amend their Ballot solely for purposes of electing to be a Class 5 claimant at any time on or before the Confirmation Date.  If the Noteholder does not qualify as a Participating Noteholder, then notwithstanding the election it will be treated as a Class 4 Claim.

**4.5   Class 5 – Participating Noteholder Claims.**

(a)   <u>Classification</u>.  Class 5 consists of the Allowed Claims of Participating Noteholders.

(b)   <u>Impairment and Voting</u>.  The Allowed Participating Noteholder Claims are Impaired under the Plan.  Each holder of an Allowed Participating Noteholder Claim shall be entitled to vote to accept or reject the Plan.

(c)   <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, and release of their respective Allowed Participating Noteholder Claims, each holder of an Allowed Participating Noteholder Claim shall receive from the Liquidating Trustee on the Plan Distribution Date its *pro rata* share of its beneficial interest in the Liquidating Trust as a Class 5 Liquidating

Trust Beneficiary, entitling such holder to receive proceeds on account of such beneficial interest as further set forth in Section 7.2 herein.

(d)   Ballot Election. The holder of a Noteholder Claim may elect to be treated as a Class 5 Participating Noteholder Claim by indicating same on the Ballot and delivering the Ballot to the Plan Proponents no later than the deadline for voting on the Plan provided, however, that a Class 4 claimant may amend their Ballot solely for purposes of electing to be a Class 5 claimant at any time on or before the Confirmation Date. If a holder of a Allowed Noteholder Claim elects to be treated as a Class 5 Participating Noteholder and it is later determined that their claim does not qualify to be a Participating Noteholder Claim, such claim shall only be entitled to distribution as a Class 4 claimholder.

**4.6    Class 6 – Other Unsecured Claims.**

(a)   Classification. Class 6 consists of the Allowed Other Unsecured Claims.

(b)   Impairment and Voting. The Other Unsecured Claims are Impaired under the Plan. Each holder of an Other Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)   Claim Treatment. In full and complete satisfaction, settlement, and release of their respective Allowed Other Unsecured Claims, each holder of an Allowed Other Unsecured Claim shall receive from the Liquidating Trustee on the Plan Distribution Date its *pro rata* share of its beneficial interest in the Liquidating Trust as a Class 6 Liquidating Trust Beneficiary, entitling such holder to receive proceeds on account of such beneficial interest.

**4.7    Class 7 – Equity Interest.**

(a)   Classification. Class 7 consists of all Equity Interests in the Debtor.

(b)   Impairment and Voting. Class 7 is Impaired under the Plan. Each holder of an Equity Interest shall be conclusively deemed to have rejected the Plan.

(c)   Treatment. Equity Interests shall be retained under the Plan, provided that management and control of the Debtor shall vest exclusively in the Plan Administrator.

**4.8    Reservation of Rights.**

The Liquidating Trustee reserves the right to, among other things, (a) object to any Claim, (b) contest the right of the holder of any Claim or Equity Interest to receive distributions under the Plan, and (c) seek to subordinate any Claim for inequitable conduct or otherwise.

**4.9    Special Provision Regarding Unimpaired Claims.**

Except as otherwise provided in this Plan, nothing shall affect the Estate Fiduciaries' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to, all rights with respect to legal and equitable defenses to, setoffs against, or recoupments of Unimpaired Claims.

**4.10    Voting of Claims.**

Each holder of an Allowed Claim in an Impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered Ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**4.11    Acceptance by Impaired Classes.**

An Impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**4.12    Elimination of Classes.**

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

**4.13    Nonconsensual Confirmation.**

If any Impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired class is deemed to have rejected the Plan, the Plan Proponents reserve the right (a) to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Creation of Liquidating Trust.**

As soon as practicable following the Effective Date, the Liquidating Trust shall be established, and the Liquidating Trustee shall be appointed. The Liquidating Trustee shall be

deemed to be the duly appointed representative of the Estate pursuant to 11 U.S.C. §1123(b)(3)(B) with respect to the Liquidating Trust Assets including, without limitation, the Causes of Action. As further set forth in Article VII, the Liquidating Trustee shall be responsible for, among other things, (i) resolving disputed Claims, (ii) pursuing, litigating, and/or settling Causes of Action and Participating Noteholder Claims, and (iii) distributing funds to beneficiaries of the Liquidating Trust.

### 5.2   Liquidating Trust Assets

(a)     Upon the Effective Date: (i) one hundred percent (100%) of the Assets shall be transferred, assigned, and conveyed to, or shall vest in, the Liquidating Trust; and (ii) one hundred percent (100%) of the Participating Noteholder Claims shall be transferred, assigned, and conveyed to, or shall vest in, the Liquidating Trust. All of the Liquidating Trust Assets shall vest in the Liquidating Trust, free and clear of all Claims, Liens, and encumbrances, but subject to payment of the Liens and Claims as provided under the Plan. Except as may be expressly provided in the Plan or in a Final Order of the Bankruptcy Court, no Asset of the Estate shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of the Debtor shall be deemed waived, released or compromised.

(b)     The Liquidating Trust shall be administered in accordance with the Liquidating Trust Agreement, and the Liquidating Trustee shall have the standing and authority to enforce any obligations to it under the Plan; *provided* that the costs of administering the Liquidating Trust and all fees and expenses incurred by and on behalf of the Liquidating Trust shall be charged against the Liquidating Trust Assets subject to the terms of the Liquidating Trust Agreement.

### 5.3   Plan Administrator.

As of the Effective Date, the Plan Administrator shall be deemed appointed. Upon the Effective Date, all of the Debtor's officers and members of its board of directors shall be deemed to have resigned without the necessity of any further action or writing and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date to the Debtor or its creditors under the Plan or applicable law. The Plan Administrator shall be deemed from and after the Effective Date to be the sole authorized officer of the Debtor and to have full power and authority to take all actions, including retention of professionals, and execute all documents on behalf and in the name of the Debtor that are necessary or appropriate to implement the Plan, and to wind down the Debtor's business and financial affairs. The Plan Administrator's authority shall expressly include the right to object to Professional Fee Claims.

### 5.4   Administration of the Estate.

From and after the Effective Date, the Plan Administrator shall undertake to complete the wind down of the Debtor's business and financial affairs, including without limitation through the filing of tax returns, destruction or other disposition of the Debtor's business and financial records, and such other matters necessary or appropriate in the Plan Administrator's judgment to effect the efficient, timely, and practicable administration of the Estate, permit the distributions pursuant to Article IV, and thereafter permit the closing of the Bankruptcy Case.

The Plan Administrator shall have no obligation to file, and the Debtor and the Estate shall be excused from filing, any and all financial reports, corporate status reports, or analogous reports that the Debtor might have been responsible for filing with the Commonwealth of Massachusetts or any other state or jurisdiction in which the Debtor conducted business operations or maintained property; *provided, however*, that nothing in this Section or in any other provision of the Plan shall (i) be deemed to relieve the Debtor from any required filing of its federal income tax returns for any tax period ending prior to or as of the closing of the Bankruptcy Case, and (ii) authorize or empower the Plan Administrator to engage in any act or omission that would have the effect of impairing any Estate Cause of Action.

The Plan Administrator may rely upon and shall be fully protected in acting upon any resolution, statement, certificate, instrument, report, notice, request, consent, order or other document which, in the absence of bad faith, willful misconduct, gross negligence or willful disregard of its duties, the Plan Administrator believes to be genuine and to have been signed by (or in the case of cables, telecopies, electronic mail transmittals, and the like) to have been sent by the proper party. The Plan Administrator shall have the independent right at any time to seek instructions from the Bankruptcy Court concerning any question arising in connection with the performance of the Plan Administrator's duties under the Plan.

**5.5    Cooperation between Plan Administrator and Liquidating Trustee.**

The Plan Administrator and the Liquidating Trustee shall coordinate with one another in resolving Claims that are unliquidated, contingent, or disputed, through adjudication by the Bankruptcy Court or pursuant to the term of the Liquidating Trust. The Plan Administrator may delegate its authority and powers under the Plan to the Liquidating Trustee and, effective upon the Effective Date, the Liquidating Trustee shall be deemed to have the same rights, powers, and authority as the Plan Administrator with respect to any remaining matters affecting the Estate or the winding up of the Debtor's business and financial affairs.

**5.6    Plan Reserve**

As soon as practicable after the Effective Date, the Liquidating Trustee shall establish and fund the Plan Reserve from the Assets. The Liquidating Trustee shall make distributions from the Plan Reserve to pay expenses as and when Allowed by the Bankruptcy Court or otherwise when due.

**5.7    Funding of Litigation Reserve**

In connection with the initial Cash distribution of Net Asset Proceeds, the Liquidating Trustee shall withhold an amount equal to the Litigation Reserve from those amounts otherwise payable to Participating Noteholders on a *pro rata* basis.

**5.8    Corporate Action.**

Confirmation of the Plan shall constitute authorization for the Estate Fiduciaries to effectuate the Plan and to execute, issue, deliver, file or record all contracts, instruments and other agreements or documents, and take such actions as may be necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan without further notice to or action, order or approval of the Bankruptcy Court or any other entity except for those expressly required pursuant to this Plan. All matters provided for in the Plan involving any corporate action to be taken by or required of the Debtor in connection with the Plan shall be deemed to have occurred, and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects, without any requirement of further action by the Debtor, its agents, representatives, stockholders, members, managers, officers, directors or affiliates.

### 5.9    Preservation of Causes of Action.

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Liquidating Trust will exclusively retain and may enforce, and the Liquidating Trustee expressly reserves and preserves for these purposes, in accordance with Sections 1123(a)(5)(A) and 1123(b)(3) of the Bankruptcy Code, any Claims, Causes of Action and demands and rights relating thereto that the Debtor or its Estate may hold against any Person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan. The Participating Noteholder Claims are expressly reserved and preserved by the Liquidating Trust for later investigation and prosecution by the Liquidating Trustee.

### 5.10    Dissolution of the Committee.

Unless previously dissolved, the Committee shall dissolve automatically on the Effective Date. Upon such dissolution, its members, professionals, and agents shall be released from any further duties and responsibilities in the Bankruptcy Case and under the Bankruptcy Code, except with respect to applications for Professional Fee Claims or reimbursement of expenses incurred as a member of the Committee.

### 5.11    Default.

No event of default under the Plan shall occur unless, in the event of a breach of the Estate Fiduciaries' obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Estate Fiduciary and such breach is not cured: (i) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) days of the Estate Fiduciary's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Estate Fiduciary's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Estate Fiduciary has commenced curing such breach and continues to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

**5.12    Dissolution of the Debtor.**

The Plan Administrator shall be authorized to dissolve the Debtor at any time on or after the Effective Date as it deems appropriate or necessary in its discretion, in consultation with the Liquidating Trustee, and shall be authorized to prepare and file any final tax returns or other reports. The dissolution of the Debtor shall not and shall not be deemed to impair, prejudice, or diminish the Liquidating Trust's rights under the Plan.

**5.13    Further Authorization.**

The Estate Fiduciaries shall be entitled to seek such orders, judgments, injunctions, and rulings and take such actions as deemed necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**5.14    Final Decree.**

The Estate Fiduciaries shall be authorized to prepare and file a motion requesting that the Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI

## DISTRIBUTIONS TO LIQUIDATING TRUST BENEFICIARIES AND RESOLUTION OF DISPUTED CLAIMS

**6.1    Method and Timing of Distributions Under the Plan.**

(a)    The Liquidating Trustee shall make all distributions to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and the Liquidating Trust Agreement. Distributions shall be made at such times and in such amounts as is determined by the Liquidating Trustee in consultation with the Oversight Committee. The recipients of distributions under the Plan shall comply with any reporting requirements of the Liquidating Trustee as a condition to payment, including if necessary the delivery of W-9 or similar forms to the Liquidating Trustee.

(b)    In General. Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Liquidating Trustee to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Liquidating Trustee has been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Liquidating Trustee shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(c)    Form of Distributions. Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Liquidating Trustee pursuant to the Plan shall be made by check.

(d)    <u>Distributions to be on Business Days</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(e)    <u>Fractional Dollars</u>.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(f)    <u>Interest and Penalties on Claims</u>.  Unless otherwise specifically provided for in this Plan or the Confirmation Order or other Order of the Bankruptcy Court, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

(g)    <u>Distributions to Holders as of the Distribution Record Date</u>.  The Liquidating Trustee shall be entitled to rely upon the register of Claims as of the Distribution Record Date. Any transfers of an Allowed Claim shall be recognized ten (10) days after written notice of such transfer is received by the Liquidating Trustee as provided herein.

**6.2    Objections to Disputed Claims.**

The Liquidating Trustee may file any objections to Claims against the Debtor.

**6.3    Deadline for Objecting to Disputed Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Liquidating Trustee may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) one hundred twenty (120) days after the Effective Date.

**6.4    Estimation of Claims.**

After the Effective Date, the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Liquidating Trustee from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5     Disputed Claims Reserve.**

(a)     <u>Establishment</u>.  A reserve shall be maintained equal to 100% of the beneficial interests in the Liquidating Trust and the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Final Order.

(b)     <u>Investment of Cash</u>.  Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable the holder of the Disputed Claim Reserve to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims.  Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account of the Liquidating Trust, and the Liquidating Trustee shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)     <u>Distributions Upon Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive beneficial interests in the Liquidating Trust and distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim shall have any claim against the respective Disputed Claims Reserve or the Liquidating Trust with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

**6.6     Reversion of Unclaimed Checks.**

If a check remains unclaimed for a period of one hundred eighty (180) days after distribution, the party otherwise entitled to such distribution shall be deemed to have forfeited its right to the distribution and any future distributions, and the Liquidating Trustee may redistribute the Cash to other beneficiaries under the Plan as if such Claim or Equity Interest was disallowed.

**ARTICLE VII**

**LIQUIDATING TRUSTEE**

**7.1     Appointment of Liquidating Trustee and Vesting of Estate Powers.**

Upon the Effective Date, the Liquidating Trustee shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code with respect to all Liquidating Trust Assets and rights belonging to the Estate and thereafter transferred to the Liquidating Trust pursuant to this Plan, including, without limitation the standing and authority to commence, prosecute and compromise objections to Claims and Causes of Action, whether initially filed by the Debtor or Plan Administrator or as may be filed by the Liquidating Trustee.  The Liquidating Trustee shall stand in the same position as the

20

Debtor and/or the Estate with respect to any claim the Debtor and/or the Estate may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Liquidating Trustee shall succeed to all of the Debtor's and/or the Estate's rights to preserve, assert or waive any such privilege. The Liquidating Trustee shall be vested with authority to pursue, prosecute, and settle the Participating Noteholder Claims on behalf of the Class 5 Liquidating Trust Beneficiaries.

### 7.2    Allocation and Distribution of Funds

The Liquidating Trustee is responsible for distributing the Net Asset Proceeds and the Net Participating Noteholder Claim Proceeds in accordance with the Plan. The Net Asset Proceeds shall be allocated and distributed to Classes 4, 5, and 6 Liquidating Trust Beneficiaries by aggregating all Allowed Claims in Classes 4, 5, and 6 and distributing the Net Asset Proceeds to all such claimants on a proportionate basis. The Net Participating Noteholder Claim Proceeds shall be allocated and distributed only to Class 5 Liquidating Trust Beneficiaries on a *pro rata* basis.

### 7.3    Liquidating Trustee's Rights and Powers.

The Liquidating Trustee's rights and powers shall include the following:

(a)    Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions, and at such time or times as the Liquidating Trustee shall determine, any or all of the Liquidating Trust Assets (whether tangible or intangible); to that end, grant options, make contracts, retain brokers, and sign, seal, acknowledge, and deliver any and all proper deeds, or other instruments of conveyance or transfer thereof; and delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, transfer, or exchange of any such property;

(b)    Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Trustee's duties hereunder and under the Plan;

(c)    Subject to any limitations contained in the Plan and the Liquidating Trust Agreement, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims, including claims described in the Plan and in the Liquidating Trust Agreement, other matters, or taxes;

(d)    Pay all taxes, expenses and obligations of the Liquidating Trust out of the Assets;

(e)    Investigate, prosecute, litigate, and settle any and all Avoidance Actions and Causes of Action that may belong to the Debtor or its Estate, including any Avoidance Action brought by the Debtor prior to the Effective Date, which Causes of Action, rights to payment and claims as of the Effective Date shall vest solely and exclusively in the Liquidating Trustee, for the benefit of the Liquidating Trust Beneficiaries, pursuant to the terms of the Plan; and

(f)    (i) Invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed by the Liquidating Trust or incurred by the Liquidating Trustee or the Debtor; (iv) engage and compensate from the Liquidating Trust Assets, consultants, agents, employees, and

Professionals (including, without limitation, attorneys on a contingency fee basis) to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities; (v) retain and compensate from the Liquidating Trust Assets the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Liquidating Trust Assets; (vi) liquidate and dispose of the Liquidating Trust Assets; (vii) compromise and settle Claims and Causes of Actions; (viii) act on behalf of the Debtor and its Estate in all adversary proceedings and contested matters (including, without limitation, the Avoidance Actions) pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (ix) commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan; (x) utilize Liquidating Trust Assets to purchase appropriate insurance to insure the acts and omissions of the Liquidating Trustee; (xi) make distributions from the Plan Reserve; and (xii) act and implement the Plan, the Liquidating Trust Agreement, and orders of the Bankruptcy Court;

(g)    Investigate, prosecute, litigate, and settle any and all Participating Noteholder Claims which Participating Noteholder Claims shall vest solely and exclusively in the Liquidating Trustee for the benefit of the Class 5 Liquidating Trust Beneficiaries.

### 7.4    Selection of Agents.

The Liquidating Trustee may retain its firm or company to provide professional services in conjunction with its duties under this Plan. The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any Person with an interest in the Liquidating Trust by reason of any mistake or default of any such agent or consultant unless such mistake or default breaches the standard of care set forth in Section 7.6(a) of this Plan.

### 7.5    Maintenance of Register.

The Liquidating Trustee shall at all times maintain a register of the names, addresses, and amount of the Claims against the Liquidating Trust as of the Effective Date and as revised from time to time thereafter.

### 7.6    Liability of Liquidating Trustee.

(a)    <u>Standard of Care</u>.  The Liquidating Trustee shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by this Plan, or be responsible for the consequences of any act or failure to act, except for bad faith, gross negligence or willful misconduct. The Liquidating Trustee shall not have any fiduciary relationship with any party by virtue of this Plan except as specifically set forth in this Agreement:

(i)    The Liquidating Trustee shall not, solely by virtue of its position as Liquidating Trustee, be liable or in any way responsible for the acts or omissions of the Debtor, its board of directors, officers, employees, or agents, that occurred prior to the Effective Date.

(ii)    Unless indemnified to its satisfaction against liability and expense, the Liquidating Trustee shall not be compelled to do any act or to take any action

toward the execution or enforcement of the powers created under this Plan or to prosecute or defend any suit in respect of this Plan. If the Liquidating Trustee requests approval from the Bankruptcy Court with respect to any act or action in connection with this Plan, the Liquidating Trustee shall be entitled (but shall not be required) to refrain (without incurring any liability to any Person by so refraining) from such act or action unless and until he has received such instructions or approval. In no event shall the Liquidating Trustee or any of its representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(iii)   The Liquidating Trustee shall not be responsible in any manner to the Debtor, its Estate, any holder of a Claim or Equity Interest, or any party-in-interest for:

(A)   the creditworthiness of any party and the risks involved to the Liquidating Trust or such holder or party-in-interest;

(B)   the effectiveness, enforceability, genuineness, validity, or any due execution of this Plan as to any Person other than the Liquidating Trustee;

(C)   any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with this Plan that does not constitute a breach of the standard of care set forth in Section 7.6(a) of this Plan on the part of the Liquidating Trustee;

(D)   the existence, priority or perfection of any existing Lien;

(E)   the observation or compliance with any of the terms, covenants, or conditions of this Plan on the part of any party thereto other than the Liquidating Trustee;

(F)   any loss to the Liquidating Trust resulting from the investment of the Liquidating Trust Assets, or their proceeds, in any Permitted Investments; or

(G)   losses to any retirement, employee benefit, or pension plan of the Debtor in excess of the amounts available to be distributed from such plans.

The Debtor, holders of Claims or Equity Interests and parties-in-interest, by voting for this Plan and/or accepting the benefits of this Plan, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Trustee except for actions or omissions which violate the standard of care set forth in Section 7.6(a) of this Plan.

(b)   No Liability for Acts of Predecessor. No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any preceding Liquidating Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement

of Liquidating Trust Assets furnished to such successor Liquidating Trustee by any preceding Liquidating Trustee and shall be responsible only for those Liquidating Trust Assets included in such statement.

(c)    <u>No Implied Obligations</u>.  The Liquidating Trustee's liability shall be limited to the performance of such duties and obligations as are specifically set forth in this Plan.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in this Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Liquidating Trust Assets.  The Liquidating Trustee makes no representations as to the value of the Liquidating Trust Assets.

(d)    <u>Reliance by Liquidating Trustee on Documents or Advice of Counsel or Other Persons</u>.  The Liquidating Trustee may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Liquidating Trustee to be genuine and to be signed or presented by the proper Persons.  Subject to its obligation to meet the standard of care in Section 7.6(a), the Liquidating Trustee shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

(e)    <u>No Personal Obligation for the Debtor's Liabilities</u>.  The Liquidating Trust Beneficiaries, and other Persons transacting business with the Liquidating Trustee in its capacity as Liquidating Trustee, shall be limited to the Liquidating Trust Assets, to satisfy any liability incurred by the Liquidating Trustee to such Person in carrying out the terms of this Plan, and the Liquidating Trustee shall have no personal obligation to satisfy any such liability.

7.7    **Reports; Tax Returns.**

After the Effective Date, the Liquidating Trustee shall be responsible for the filing of any and all federal and state tax returns required by law to be filed by the Liquidating Trust, including the final tax returns, and any tax liability shall be an obligation of the Liquidating Trust payable from the Liquidating Trust Assets.

7.8    **Federal Income Tax Treatment of Liquidating Trust.**

The Liquidating Trust will be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Tax Regulations.  The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as a transfer to the Liquidating Trust Beneficiaries for all purposes of the Internal Revenue Code (e.g., sections 61(a)(12), 483, 1001, 1012, and 1274) followed by a deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust, and the Liquidating Trust Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust.  The Liquidating Trustee shall value the Liquidating Trust Assets and notify the Liquidating Trust Beneficiaries of such valuations.  The Liquidating Trust Assets shall be valued consistently by the Liquidating Trustee and the Liquidating Trust Beneficiaries for all federal income tax

purposes. In connection with all distributions made pursuant to the Liquidating Trust and all activities of the Liquidating Trust, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan and the Liquidating Trust will be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 1.671-4(a) of the Income Tax Regulations promulgated pursuant to the United States Internal Revenue Code. The Liquidating Trustee may require Liquidating Trust Beneficiaries to furnish to the Liquidating Trustee its, his or her employer or taxpayer identification number ("TIN") as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any distribution to any such Liquidating Trust Beneficiaries pursuant to the Plan upon receipt of such identification number. If a Liquidating Trust Beneficiary shall fail to provide the Liquidating Trustee with any requested TIN within 90 days after the request, such failure shall be deemed a waiver of all of such Liquidating Trust Beneficiaries' interests in the Liquidating Trust and rights to distribution under the Plan. Distributions that would have been made to such Liquidating Trust Beneficiary shall be distributed to the other Liquidating Trust Beneficiaries of the Liquidating Trust pursuant to the Plan based on their *pro rata* interests in the Liquidating Trust.

### 7.9    Compensation of Liquidating Trustee and Its Agents.

The Liquidating Trustee's compensation shall be based upon hourly rates typically charged in the conduct of the Liquidating Trustee's business and may be paid from the Liquidating Trust Assets on a monthly basis without further notice or order of the Bankruptcy Court. Agents retained by the Liquidating Trustee, including Professionals, may submit monthly statements to the Liquidating Trustee describing with reasonable particularity the amount of fees and expenses sought, the time expended, and the nature, extent, and value of the services provided during the period covered by such request. In the absence of objection by the Liquidating Trustee, such fees and expenses shall be paid within ten (10) days of issuance of the monthly statement without further notice or order of the Bankruptcy Court. The Liquidating Trustee may retain, compensate, employ and pay agents and Professionals on other terms, including payment on a contingency basis, subject to the agreement of the parties without need for notice or any order of the Bankruptcy Court. In the event of any objection to a compensation request, the Bankruptcy Court shall retain jurisdiction to hear and determine such dispute. Payment of fees and reasonable out-of-pocket expenses of the Liquidating Trustee and any agents or consultants employed pursuant to this Agreement shall be reimbursed as a priority from the Liquidating Trust Assets.

### 7.10    Liquidating Trustee's Indemnification.

The Liquidating Trustee shall be indemnified by, held harmless, and receive reimbursement from the Liquidating Trust Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred, except in the event that a court of competent jurisdiction determines that such losses or claims were the result of a breach of the standard of care set forth in Section 7.6(a) of this Plan.

### 7.11    Removal of Liquidating Trustee.

The Liquidating Trustee may be removed only for cause upon a motion to the Bankruptcy Court. If the Liquidating Trustee is removed for cause, the Liquidating Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation. The term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform its duties under this Plan, (b) the Liquidating Trustee's misappropriation or embezzlement of any Liquidating Trust Assets, or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform its duties under this Plan. If a Liquidating Trustee is removed or is unwilling or unable to serve by virtue of its inability to perform its duties due to death, illness, or other physical or mental disability, following the liquidating of all or substantially all of the Liquidating Trust Assets, or for any other reason whatsoever, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued and unpaid fees, reimbursement of expenses, and other compensation incurred before its removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

### 7.12    Resignation of Liquidating Trustee.

A Liquidating Trustee may resign upon notice to the Oversight Committee, which resignation shall become effective thirty (30) days after delivery. If a Liquidating Trustee resigns from its position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other compensation incurred before its resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

### 7.13    Successor Liquidating Trustee.

In the event that a Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee may be appointed by the Oversight Committee or by order of the Bankruptcy Court.

### 7.14    Third Parties.

Except as set forth in this Plan, there is no obligation on the part of any party transacting business with the Liquidating Trustee or any agent of the Liquidating Trustee to: (a) inquire into the validity, expediency, or propriety of any transaction, (b) inquire into the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the transaction, or (c) to monitor the application of the purchase money or other consideration paid or delivered to the Liquidating Trust.

### 7.15    Bond and Insurance Requirements.

On the Effective Date, or immediately thereafter, the Liquidating Trustee shall procure a bond in an amount equal to undistributed Cash on hand as of the Effective Date. The bond shall be written by an insurance company authorized to do business in the Commonwealth of Massachusetts and written on a standard and customary bond form. The Liquidating Trustee

may adjust the amount of the Bond in its business judgment; provided that, in no event shall the amount of the bond be less than the amount of undistributed Cash on hand. No bond shall be required if and when the amount of undistributed Cash on hand shall be less than $200,000.00.

### 7.16    Oversight Committee

(a)    *Consultation with Oversight Committee*.  The Liquidating Trustee shall consult with the Oversight Committee respecting the liquidation of the Liquidating Trust Assets, the resolution of Disputed Claims, and the distribution of Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement, provided that any action to be taken by the Liquidating Trustee shall be in its sole discretion consistent with its duties, rights, and powers set forth in the Plan and the Liquidating Trust Agreement.

(b)    *Tenure of the Oversight Committee*.  The Oversight Committee shall be effective as of the Effective Date of the Plan and shall remain and continue in force until the Liquidating Trust Agreement is terminated in accordance with the provisions therein.

### 7.17    Dissolution of Liquidating Trust

The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Liquidating Trust Assets have been liquidated; (ii) all distributions required to be made by the Liquidating Trustee under the Plan have been made; and (iii) the Liquidating Trust is otherwise fully administered.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    Assumption of Executory Contracts And Unexpired Leases.

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any Executory Contract or Unexpired Lease (excluding insurance policies) that (a) has not expired by its own terms, or is not subject to a notice of termination by the Debtor, on or prior to the Confirmation Date, (b) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (c) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (d) is not designated by the Plan Proponents as being an Executory Contract or Unexpired Lease to be assumed at the time of Confirmation of the Plan, shall be deemed rejected on the Effective Date.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute the approval of the rejection of Executory Contracts and Unexpired Leases pursuant to this Section of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### 8.2    Payments Related to The Assumption of Executory Contracts And Unexpired Leases.

(a)    <u>Payment of Claims Arising From Assumed Contracts And Leases</u>.  Cure Claims arising from the assumption of an Executory Contract or Unexpired Lease shall be paid in such

amounts as are or have been determined by the Bankruptcy Court, in full and complete satisfaction, settlement, and release of such Claims. The Plan Proponents assert that no Cure Claims are owed. The counterparty to an Executory Contract or Unexpired Lease to be assumed must submit an objection stating a Cure Claim seven (7) days prior to the Confirmation Date. No Cure Claim shall be owed unless determined by the Bankruptcy Court on or prior to the Confirmation Date.

(b)    Disputed Claims and Bar Date. If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an Executory Contract or Unexpired Lease, (ii) the ability of the Debtor or Liquidating Trustee or any assignee to provide "adequate assurance of further performance," within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Final Order resolving the dispute and approving the assumption.

**8.3    Rejection Damage Claims.**

If the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to the Confirmation Order results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Liquidating Trust and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee on or before thirty (30) days following the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as Other Unsecured Claims subject to the provisions of the Plan. The Liquidating Trustee shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE IX

## RELEASE AND SATISFACTION OF CLAIMS

**9.1    Compromise and Settlement of Claims, Interest and Controversies.**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and Equity Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after

the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Estate and Causes of Action against other Persons.

**9.2    Satisfaction of Claims.**

(a)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, the distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtor, and in satisfaction of all Equity Interests and the termination of Equity Interests in the Debtor including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan. Except as otherwise specifically provided in the Plan, as of the Effective Date any interest accrued on Claims against the Debtor from and after the Petition Date shall be cancelled. Accordingly, except as otherwise provided in the Plan or the Confirmation Order, confirmation of the Plan shall, as of the Effective Date, satisfy, terminate and cancel all Claims against the Debtor and Equity Interests and other rights of equity security holders in the Debtor.

(b)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtor, the Estate Fiduciaries or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

(c)    No Person holding a Claim may receive any payment from, or seek recourse or recovery against, the Plan Reserve or the Liquidating Trust Assets that are to be distributed under the Plan, other than as required to be distributed to that Person under the Plan.

**9.3    Injunction Relating to the Plan.**

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor or the Estate are, with respect to any such Claims or Equity Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, or any of their Assets, the Liquidating Trustee, or the Liquidating Trust Assets; (ii) enforcing,

levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of their Assets, the Liquidating Trustee, or the Liquidating Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or any of their Assets, the Liquidating Trustee, or the Liquidating Trust Assets; (iv) commencing or continuing in any manner or in any place, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy released or to be released pursuant to the Plan or the Confirmation Order; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan. Each holder of an Allowed Claim or Allowed Equity Interest shall be deemed to have specifically consented to the injunctions set forth herein. For the avoidance of doubt, the foregoing provisions of this Section shall not operate to waive or release the rights of the Estate Fiduciaries or other parties in interest to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.

### 9.4    Releases of Debtor and Liquidating Trust by Holders of Claims.

Except as otherwise set forth in the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (a) each holder of a Claim that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release and waive all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Liquidating Trustee's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the Bankruptcy Case or the Plan that such entity has, had or may have against the Debtor, the Estate, the Liquidating Trust Assets, or the Liquidating Trust.

### 9.5    Cancellation of Existing Indebtedness and Liens.

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the

obligations of the Debtor thereunder shall be deemed cancelled and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Liquidating Trust. To the extent deemed necessary or advisable by the Liquidating Trustee, any holder of a Claim shall promptly provide the Liquidating Trustee with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

**9.6    Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action or liability for any Claim in connection with or arising out of, the administration of the Bankruptcy Case, the negotiation and pursuit of this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding of this Plan, the consummation of this Plan, entry into the Liquidating Trust Agreement, or the administration of this Plan or the property to be distributed under this Plan, and the issuance of securities or beneficial interests under or in connection with this Plan or the transactions contemplated by the foregoing, except for willful misconduct, gross negligence, or intentional fraud as finally determined by a Final Order, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Plan.  The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder. Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the foregoing provisions of this exculpation provision shall not operate to waive or release the rights of the Debtor, the Liquidating Trustee, or other parties in interest to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered  under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.

**9.7    Setoffs.**

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor or the Liquidating Trustee, as applicable, may have against the holder of any Claim.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 10.1    Conditions Precedent to Confirmation.

The following are conditions precedent to Confirmation of the Plan, each of which must be satisfied unless waived in accordance with Section 10.3 of this Plan:

(a)    The Bankruptcy Court shall have entered an order or orders: (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan; and

(b)    the Confirmation Order and the Plan shall each be in form and substance reasonably satisfactory to the Plan Proponents.

### 10.2    Conditions Precedent to the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date under the Plan, each of which must be satisfied unless waived in accordance with Section 10.3 of this Plan:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Plan Proponents, shall have been entered by the Bankruptcy Court and shall have become a Final Order provided that, as set forth in Section 10.3 herein, the Plan Proponents may waive the requirement that the Confirmation Order shall have become a Final Order.

(b)    The Liquidating Trust shall have been formed, and the Liquidating Trustee and Oversight Committee shall each have been appointed;

(c)    All actions, documents and agreements necessary to implement the Plan shall be in form and substance reasonable acceptable to the Plan Proponents and shall have been effected or executed and delivered to the required parties and, to the extent necessary, filed with the applicable governmental units in accordance with applicable laws.

### 10.3    Waiver of Conditions.

The conditions to Confirmation of the Plan and to occurrence of the Effective Date set forth in this Article X may be waived at any time by the Plan Proponents; *provided, however,* that the Plan Proponents may not waive entry of the Confirmation Order.

**10.4    Effect of Non-occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Plan Proponents, or constitute an admission, acknowledgement, offer or undertaking by the Plan Proponents.

## ARTICLE XI

## RETENTION OF JURISDICTION

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Case and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all Professional Fee Claims, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of Executory Contracts and Unexpired Leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)    To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)    To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To determine any and all adversary proceedings, application, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee after the Effective Date including any claims that the Liquidating Trustee may choose to bring in the Bankruptcy Court with respect to the Participating Noteholder Claims;

(n)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to Section 5.9 of the Plan;

(o)     To issue any orders in aid of execution of the Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code; and

(p)     To enter an order and/or final decree concluding the Bankruptcy Case.

## ARTICLE XII

## MISCELLANEOUS

### 12.1    Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.2    Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, including the vesting of the Assets in the Liquidating Trust and the assignment of the Participating Noteholder Claims to the Liquidating Trust, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the

payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, sales tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any such tax or governmental assessment.

### 12.3    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Plan Proponents or the Estate Fiduciaries may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan document.

### 12.4    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Plan Proponents, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5 Revocation or Withdrawal of the Plan.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6 Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 12.7 Notices.

All notices, requests and demands to or upon the Plan Proponents or the Liquidating Trustee shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed to the Liquidating Trustee with a copy to:

MURPHY & KING, Professional Corporation
28 State Street, Suite 3101
Boston, MA  02109
Attn:  Harold B. Murphy, Esq.
Tel:  617- 423-0400

### 12.8 Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

### 12.9 Withholding and Reporting Requirements.

In connection with the consummation of the Plan, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 12.10 Post-Confirmation Fees, Final Decree.

The Liquidating Trustee will be responsible for timely payment of the fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is converted, dismissed, or closed. After Confirmation, the Liquidating Trustee will file the quarterly Post-Confirmation Reports, UST Form 11-PCR, with the Bankruptcy Court, in accordance with 28 C.F.R. §58.8.

**12.11  Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.12  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

/s/ Andrew G. Lizotte                              /s/ Jeffrey D. Sternklar
Harold B. Murphy, Esq.                          Jeffrey D. Sternklar, Esq.
Andrew G. Lizotte, Esq.

**MURPHY & KING, Professional Corp.**       **JEFFREY D. STERNKLAR, LLC**
28 State Street, Suite 3101                          101 Federal Street
Boston, MA  02109                                    19th Floor
Telephone:  (617) 423-0400                        Boston, MA 02210
Facsimile:  (617) 423-0498                          Telephone: (617) 207-7800
                                                              Facsimile: (617) 507-6530

Counsel to Creditors' Committee                 Counsel to Debtor


Dated: May 16, 2022


809312